DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States of America
By:      DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone (212) 637-2733
Facsimile (212) 637-0033
david.kennedy2@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUTHERFORD TENANTS CORP. and JAMES RAMADEI, <br><br> Defendants. | **COMPLAINT** <br><br> 21 Civ. ____ (_____) |

Plaintiff the United States of America, by its attorney Damian Williams, United States

Attorney for the Southern District of New York, alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil action for declaratory relief, injunctive relief, and monetary

damages under the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq*. (the "FHA"),

brought by the United States of America on behalf of Meril Lesser ("Complainant" or "Ms.

Lesser"), to redress discrimination on the basis of disability.

2.      As alleged more fully below, defendants Rutherford Tenants Corp. ("Rutherford")

and James Ramadei ("Ramadei") (collectively, "Defendants") unlawfully discriminated against

Complainant, who requires emotional support animals to assist her with her disabilities. Specifically, Defendants sought to evict Complainant for living with emotional support animals and, even though Complainant secured a purchaser for her co-operative apartment, Defendants retaliated against Complainant by wrongfully refusing to approve the sale, and preventing her from mitigating her damages.

3.      Defendants' conduct violates the FHA and should be declared unlawful and enjoined, and appropriate monetary damages should be awarded.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there, and the property that is the subject of this suit is located there.

## PARTIES AND PROPERTY

6.      Plaintiff is the United States of America.

7.      Complainant Meril Lesser is an individual with a disability, 42 U.S.C. § 3602(h), and is an "aggrieved person" within the meaning of the FHA, 42 U.S.C. § 3602(i).

8.      The Rutherford is a residential cooperative apartment building that contains 175 units, located at 230 East 15th Street in New York, New York.  Defendant Rutherford is the shareholder cooperative association.

9.      Defendant Ramadei was at all times relevant to this complaint the President of the Cooperative's Board of Directors (the "Board").

10.     The residential units at The Rutherford, 230 East 15th Street, are "dwelling[s]," as defined by 42 U.S.C. § 3602(b).

## FACTUAL ALLEGATIONS

11.     From 1999 to the present, Complainant has been a shareholder of The Rutherford and occupied or maintained Apartment 5J.

12.     At all times relevant to this complaint, Complainant has been a person with anxiety and depression, and has been subject to panic attacks. Complainant's mental impairments interfere with major life activities, including but not limited to her ability to think, sleep, and care for herself.

13.     At all times relevant to this complaint, Complainant has kept parrots as emotional support animals to ameliorate the effects of her anxiety and depression. Caring for her parrots provides Complainant with purpose and a sense of structure to perform daily tasks. Complainant's interactions with her parrots soothe and comfort her, making her feel safe and enabling her to remain calm in the face of debilitating panic attacks. Moreover, Complainant operates a jewelry business from her home and the parrots provide a calming environment in which she can work.

14.     At the time Complainant moved into The Rutherford in 1999, she disclosed that she kept two parrots as emotional support animals.

15.     Defendants do not have any policy or procedure for evaluating requests made by shareholders to reside with assistance animals.

16.     At the time Complainant moved into The Rutherford in 1999, she signed a proprietary lease. That lease included a provision stating that "[t]he Lessee shall not permit or

3

suffer any unreasonable noise or anything which will interfere with the rights of other lessees."
In addition, the "House Rules" for The Rutherford prohibit noise that "disturbs the quiet
enjoyment of other occupants of the building."

17.     Between 1999 and January 2015, there were no reported complaints of noise
emanating from Complainant's apartment. In January 2015, Complainant began keeping three
parrots in her apartment.

18.     In a letter dated May 15, 2015, Halstead Management, the management company
for Rutherford, advised Complainant that Rutherford had received complaints about noise
coming from her apartment, allegedly caused by Complainant's emotional support birds.

19.     By email dated May 26, 2015, Complainant advised one Board member that she
had spoken to Halstead Management to see if the Board, along with any of the neighbors with a
grievance, could arrange a time to meet to address the issue. Complainant advised that she would
be plugging open outlets and adding more carpeting to her apartment to reduce any noise.
Complaint further requested any documentation regarding the dates, times, and duration of the
alleged disturbances. Complainant did not receive a response to this request.

20.     By letter dated August 19, 2015, Halstead Management advised Complainant of
allegations that the noises emanating from her apartment had not been abated, and that she was
in violation of the noise level limit, as stated in the Cooperative's house rules.

21.     By letter dated September 2015, to Halstead Management, an attorney for
Complainant noted that Complainant had resided at The Rutherford for over 16 years without
complaints, and that according to The Rutherford's House Rules, residents who have complaints
about excessive noise are to make their complaint in writing to the managing agent. The attorney
for the Complainant noted that Complainant had asked on May 26, 2015, to receive copies of the

4

written complaints against her, but still had not received any copies, and that Complainant had offered to meet with the Board and any affected residents to discuss the complaints, but received no response.

22.      From October 9, 2015, through March 4, 2016, the New York City Department of Environmental Protection, Bureau of Environmental Compliance, Air and Noise Enforcement Department ("NYC DEP") received 26 noise complaints about Complainant's apartment, all anonymous but suggesting that the complaints came from an adjacent apartment.

23.      NYC DEP conducted a total of fifteen site inspections of the Complainant's apartment during varying hours of the morning, afternoon, evening, and night from October 13, 2015, through March 3, 2016. The first visit from NYC DEP was announced, but subsequent inspections were unannounced.

24.      All fifteen NYC DEP inspections found that even though parrot sounds could be heard, there were no loud, unreasonable, or excessive noises; and the DEP issued no notices of any noise violations.

25.      On February 2, 2016, the New York City Department of Health and Mental Hygiene, Bureau of Veterinary and Pest Control Services conducted an unannounced afternoon inspection of Complainant's apartment. Complainant's apartment passed the nuisance inspection.

26.      Notwithstanding the fact that none of the sixteen inspections by municipal authorities substantiated the alleged nuisance complaints, Defendants issued a Notice to Cure to Complainant on or about March 7, 2016.

27.      On or about March 28, 2016, an attorney for Complainant sent a letter to the Board addressing the Notice to Cure. The letter stated that prior to receipt of the Notice, Complainant had taken the following steps to reduce alleged objectionable noises from escaping

her apartment: plugging electrical outlets; installing more carpeting throughout the unit; always covering her birds' cages at night and whenever she left the apartment; and installing a professional sound panel to hang on the birds' cages. The letter further stated that a soundproof apartment door would be installed in her unit. Finally, the letter noted again that Complainant had made repeated requests to meet with any complaining tenants and/or the Board to address the noise complaint allegations, but those requests had been ignored.

28.     The March 28, 2016 letter also expressly advised the Board that Complainant was a person with a disability who required emotional support animals, and attached a letter from Complainant's psychiatrist stating that:

> I am licensed by the state of New York to practice Medicine with a specialty in Psychiatry. I am writing to certify that Ms. Meril Lesser, [date of birth redacted], has a mental health related disability recognized by the Diagnostic and Statistical Manual, 5th Edition.

> Ms. Meril Lesser has been under my professional care for her mental health related disability since 2009, i.e. 7 years. I am thus intimately familiar with her history and with the functional limitations posed by her mental health-related issues, which interfere with her ability to manage what would otherwise be considered normal, but significant day to day situations. In order to function optimally, Ms. Lesser requires the presence of three emotional support animals: a bare eyed Cockatoo parrot named Layla (17 years old); a white fronted Amazon parrot named Ginger (15 years old); and a Goffins Cockatoo parrot named Curtis (20 years old). Two of these birds have been with her as long as she has lived in her current apartment, 17 years. It is important to emphasize that the presence of these animals is necessary for [ ] the optimal functioning of Ms. Lesser, [who] works from home, as their presence helps to mitigate the mental health symptoms she experiences. All three birds must be present as they are long-term companions of each other and cannot be separated without negative consequences.

A copy of the March 28, 2016 letter and its attachment is annexed hereto as Exhibit A.

29.     By letter dated March 30, 2016, Defendants refused to accept Complainant's request for an accommodation, calling her request "irrelevant" and "misplaced."

30.    On or about May 17, 2016, Defendants issued a Notice of Termination to Complainant with a vacate date of May 31, 2016.

31.    On or about June 13, 2016, Defendants initiated a Notice of Petition for a Court Eviction hearing, which commenced on or about June 29, 2016, in the Civil Court of New York, Housing Part.

32.    In mid-July 2016, Complainant moved out of her apartment at The Rutherford. Since that time and continuing to the present, Complainant has continued to pay monthly utility and maintenance obligations even though she has not lived in the apartment.

33.    Beginning in June 2016 and continuing to the present, including court hearings in 2017 and 2018, Defendants have continued to prosecute the eviction against Complainant for keeping emotional support animals notwithstanding being on notice that Complainant requires emotional support animals for her disabilities.

34.    Defendants' actions have exacerbated Complainant's psychiatric conditions and caused emotional distress.

35.    Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Complainant.

36.    On May 14, 2018, Complainant filed a timely complaint against Defendants with the Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610, alleging that Defendants' ongoing refusal to allow her live with her emotional support animals at The Rutherford, and their ongoing effort to terminate her right to reside at The Rutherford, constitute discrimination against her because of her disability. On December 16, 2020, Complainant advised HUD of allegations of unlawful retaliation based on the incidents described below in paragraphs 38-45.

37.     By stipulation dated March 22, 2019, the parties stipulated to stay the housing court proceeding pending the result of the HUD investigation. Defendants have refused to dismiss the action despite their knowledge of Complainant's need for her emotional support animals.

38.     Two months after Complainant filed her complaint with HUD, in July 2018, Defendants, for the first time, placed on Complainant's July 9, 2018 monthly maintenance bill a charge of $62,241. The charge was allegedly for legal costs incurred by Rutherford in the eviction proceedings, but constituted retaliation for Complainant's filing of a complaint with HUD.

39.     Defendants continued to retaliate against Complainant by placing charges for legal fees on Complainant's maintenance bills, including the following: August 21, 2018 for $71,164.74; September 20, 2018, for $71,164.74; and October 25, 2018 for $72,588.04. Eventually, by May 1, 2019, Defendants removed the charges from Complainant's maintenance bills.

40.     On or about March 1, 2019, Complainant listed her apartment for sale.

41.     On August 16, 2019, Complainant entered a contract of sale for her unit with a prospective purchaser (the "Applicant") for the purchase price of $467,500.

42.     The Applicant submitted his application to Defendants for their approval of the sale by October 11, 2019. On October 21, 2019, Defendants' management agent instructed the Applicant to submit additional information, which the Applicant submitted on October 25, 2019. Defendants never interviewed the Applicant.

43.     On December 16, 2019, the Board denied the Applicant's application to purchase Complainant's unit. At the time of his application, the Applicant had a low debt-to-income ratio

of 17%. Moreover, his license to practice medicine was clear and active in the state of Florida. A background check of Applicant conducted by HUD in August 2020 yielded no criminal history, except for a traffic infraction, and no record of bankruptcy, sex offender registration, lien, outstanding judgment, or litigation.

44.     During its investigation, HUD asked Defendants to provide a legitimate, non-retaliatory reason for their denial of the Applicant's application to purchase Complainant's apartment. Defendants refused to provide any reason or explanation for their decision.

45.     As a result of Defendants' filing of an eviction action against Complainant and their retaliatory refusal to approve a qualified Applicant for purchase of Complainant's apartment, Complainant suffered actual damages, including lost sales opportunity, out-of-pocket expenses, and emotional and physical distress.

## PROCEDURAL BACKGROUND

46.     The Secretary of HUD (the "Secretary") investigated the administrative complaint and attempted to conduct conciliation, without success, according to the requirements of 42 U.S.C. § 3610(a) and (b).

47.     Based on HUD's investigation of the administrative complaint, the Secretary determined that there was reasonable cause to believe that Defendants discriminated against Complainant on the basis of disability.

48.     On January 15, 2021, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2), charging Defendants with engaging in discriminatory housing practices and retaliation in violation of the Fair Housing Act.

49.     On February 2, 2021, Defendants timely elected to have the charge decided in a federal civil action, pursuant to 42 U.S.C. § 3612(a) (*see* Exh. B).  Following Defendants'

election, the Secretary authorized the Attorney General to file this action on Complainants' behalf, pursuant to 42 U.S.C. § 3612(o)(1). Through a series of tolling agreements, Defendants have agreed to toll the filing deadline to December 6, 2021.

## CLAIM FOR RELIEF

50.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth in this paragraph.

51.  Defendants violated the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(A), (f)(2)(A), and (f)(3)(B), by making housing unavailable and discriminating against Complainant in the terms, conditions, and privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of her disability.

52.  Defendants violated the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), by refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling.

53.  Defendants violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, and interfering with Complainant on account of her having exercised or enjoyed her rights under the Act.

WHEREFORE, Plaintiff the United States requests that the Court enter judgment:

1.  Declaring that Defendants' policies, practices and/or conduct as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*;

2.  Enjoining Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with them, from:

(a)   discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of a disability of that buyer or renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

(b)   discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2)(A);

(c)   failing or refusing to make reasonable accommodations as required by 42 U.S.C. § 3604(f)(3)(B);

(d)   coercing, intimidating, threatening, and interfering with Complainant on account of her having exercised or enjoyed her rights, in violation of 42 U.S.C. § 3617;

(e)   failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant to the position she would have been in but for the discriminatory conduct; and

(f)   failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

3.   Awarding monetary damages to Complainant, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

4.    Granting such further relief as this Court may deem just and proper.

The United States respectfully requests trial by jury.

Dated: New York, New York
       12/ 6    , 2021

                                DAMIAN WILLIAMS
                                United States Attorney for the
                                Southern District of New York
                                *Attorney for the United States of America*

                    By:         _____
                                DAVID J. KENNEDY
                                Assistant United States Attorney
                                86 Chambers Street, Third Floor
                                New York, New York 10007
                                Telephone:  (212) 637-2733
                                Facsimile:  (212) 637-0033
                                Email:  david.kennedy2@usdoj.gov