UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 21 CIV 10383 (JHR)(OTW) |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| –against– | |
| RUTHERFORD TENANTS CORP. and JAMES RAMADEI, | |
| Defendants. | |

### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTION
### FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

Herrick, Feinstein LLP
2 Park Avenue
14th Floor
New York, NY 10016
Counsel for Defendants
Telephone: 212-592-1625
plivingston@herrick.com
dkoplovitz@herrick.com

Of Counsel:
Peter I. Livingston
Deborah Koplovitz

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

LEGAL STANDARDS ........................................................................................................4

FACTUAL BACKGROUND..................................................................................................5

FRAMEWORK FOR THE GOVERNMENT'S CLAIMS ...........................................................12

ARGUMENT ....................................................................................................................12

1. Lesser Was Not Denied A Request For A Reasonable
Accommodation………………………………………………………………………...……...12

2. There Was No Retaliation Against Lesser  ……………………….…………………..…16

CONCLUSION…………………………………………………………………………………..20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andover Hous. Auth. V. Shkolnik*,
    *443 Mass. 300, 820 N.E.2d 815 (2005)* ...................................................................14

*Austin v. Town of Farmington*,
    826 F.3d 622 (2d Cir. 2016)......................................................................................13, 16

*Bentley v. Peace and Quiet Realty*,
    367 F. Supp. 2d 341 (E.D.N.Y. 2005) .........................................................................12

*Birch Fam. Servs., Inc. v. Wlody*,
    No. 21-1553, 2022 WL 1468160, at *1 (2d Cir. May 10, 2022) ……………………………16

*Bronk v. Ineichen*,
    54 F3d 425 (7th Cir. 1995) ...........................................................................................13

*Brooklyn Ctr. for Indep. of the Disabled v. MTA*,
    11 F. 4th 55 (2d Cir. 2021) .............................................................................................5

*Campos v. HMK Mortg., LLC*,
    458 F. Supp. 3d 517 (N.D. Tex. 2020) ........................................................................17

*Collado v. 946 Bushwick Ave., LLC*,
    No. 16-CV-7173, 2017 WL 2838143 (E.D.N.Y. June 30, 2017) .................................13

*Francis v. Kings Park Manor, Inc.*,
    992 F.3d 67 (2d Cir. 2021)......................................................................................14, 15

*Geraci v. Union Square Condo. Ass'n*,
    891 F.3d 274 (7th Cir. 2018) .......................................................................................17

*Globecon Grp., LLC v. Hartford Fire Ins. Co.*,
    434 F.3d 165 (2d Cir. 2006)...........................................................................................4

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,
    374 F.3d 56 (2d Cir. 2004).............................................................................................5

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009).......................................................................................................16

*Hovsons, Inc. v. Twp. of Brick*,
    89 F.3d 1096 (3d Cir. 1996)..........................................................................................13

HF 15048051v.1

*Kris v. Dusseault Fam. Revocable Tr.*,
 No. 18-CV-566-LM, 2022 WL 867990 (D.N.H. Mar. 23, 2022) ...........................................16

*Lynn v. Village of Pomona*,
 373F Supp 2d 418 (S.D.N.Y 2005) ...................................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)...........................................................................................................5

*McElwee v. Cnty. of Orange,* 700 F.3d 635, 641 (2d Cir. 2012) ..................................................13

*Mueller v. Sylacauga Hous. Auth.,*,
 No. 1:20-CV-00029-SGC, 2022 WL 4538457 (N.D. Ala. Sept. 28, 2022),
 appeal dismissed, No. 22-13663-D, 2022 WL 18492131 (11th Cir. Dec. 1,
 2022) ..................................................................................................................................16

*Olsen v. Stark Homes, Inc.*,
 759 F.3d 140 (2d Cir. 2014)............................................................................................12

*Shade v. Hous. Auth. of the City of New Haven*,
 251 F.3d 307 (2d Cir. 2001)...............................................................................................5

*Sinisgallo v. Town of Islip Housing Authority*,
 865 F.Supp.2d 307 (E.D.N.Y. 2012) ...............................................................................13

*Taylor v. Nat'l Invs., Ltd.*,
 No. CV 17-117 WES, 2022 WL 306367 (D.R.I. Feb. 2, 2022) ............................................17

*Weinstock v. Columbia Univ.*,
 224 F.3d 33 (2d Cir. 2000)..................................................................................................5

*Woodside Village v. Hertzmark*,
 1993 WL 268293 (Conn June 22, 1993).............................................................................14

**Statutes**

42 U.S.C. § 3602(h) ...................................................................................................................12

42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Act................................................................1, 2, 12

42 U.S.C. § 3610(g)(2)(A) ...........................................................................................................12

42 U.S.C. § 3612(o) ......................................................................................................................12

42 U.S.C. § 3617.................................................................................................................3, 16, 17

HF 15048051v.1

**Rules**

Fed. R. Civ. Pro. 56.................................................................................................................4, 5

Local Rule 56.1 ..................................................................................................................1

**Other Authorities**

HUD Guidelines………………………………………………………………………..13-14

HF 15048051v.1

Defendants Rutherford Tenants Corp. ("Rutherford") and James Ramadei by and through their attorneys Herrick, Feinstein LLP, respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment to dismiss the Plaintiff's Complaint with prejudice pursuant to the Federal Rule of Civil Procedure and Local Rule 56.1.  Except where otherwise provided all defined terms shall have the meaning set forth in the accompany Rule 56.1 Statement ("SOF") and exhibits shall refer to those annexed to the Declaration of James Ramadei dated June 16, 2023 ("Ramadei Decl.") and the Declaration of Charlotte Kullen dated June 21, 2023 ("Kullen Decl.")

## PRELIMINARY STATEMENT

At the heart of this action is the Government's erroneous assertion that the Rutherford, a New York City cooperative housing corporation, and a single member of its Board of Directors, Mr. James Ramadei, violated the provisions of 42 U.S.C. §3604(f)(3)(B) of the Fair Housing Act ("FHA") by allegedly refusing to permit Meril Lesser ("Lesser"), a shareholder of the Rutherford, to "keep" and/or "live with" three parrots as "emotional support animals" at the Rutherford's building located at 230 East 15th Street, New York, New York (the "Building").

Contrary to the suggestions in the Government's pleading, however, this is not a garden-variety case involving an alleged refusal to permit a tenant to simply "keep" an emotional support animal as a "reasonable accommodation" to a "no-pet rule". Such suppositions are completely fictitious ones because in fact, the Rutherford community as a whole –  including Lesser – were freely permitted to keep animals of any and all kinds in their apartments, without any prerequisites, or even permission from the board of directors.

What the claim actually involves, and why it fails, is the Government's mistaken contention that 42 U.S.C. §3604(f)(3)(B) grants Lesser with the unfettered right to obtain *any* accommodation – no matter how *unreasonable*  – providing her with a carte-blanche exemption to violate the

Rutherford's "*no-noise*" rule. The Government's case must be dismissed because not only is this a misapprehension of the FHA, but upon a review of the record, Lesser's patently unreasonable request was made without regard to, and at the expense of, her neighbors' contractual, statutory, and common law rights to the quiet enjoyment of *their* homes.

The Government, by its complaint, is asking this Court to ignore the plain language of the statute which includes the very words "reasonable accommodations", abandon the necessary fact-finding which is required under 42 U.S.C. §3604(f)(3)(B), and thus extend the statute to obtaining *any* accommodation, no matter how deleterious or burdensome the accommodation may be. Unfortunately for the Government, the FHA does not extend this far, and the Court is not permitted to rewrite the language of a statute by striking words that the United States Legislature has written. Moreover, as set forth herein, the Government's contentions are particularly troublesome because HUD's own guidelines explicitly provide for a contrary result to what the Government is claiming here.

The record demonstrates that the noise issue first began in March 2015, when Lesser, who already freely kept two parrots in the subject apartment since 1999 without issue or complaint, brought a *third* parrot into her apartment. It was this third, noisy parrot, who Lesser admitted to having obtained, not as an emotional support animal, but because she simply "wanted to", began to create significant noise disturbances which had a demonstrably negative and deleterious effect on other neighbors' lives. The testimony in this case demonstrates that the noise the parrots created was so excessive that the community's health was at risk, and their rights to the habitability of their apartments, as mandated by New York's Real Property Law§235(b), was jeopardized.

The Rutherford was not required to accept Lesser's patently unreasonable accommodation for carte-blanche permission to violate the no-noise rule. Instead, under the FHA, a housing

provider is permitted to reject an unreasonable request, and suggest another reasonable accommodation, which the Rutherford did, by suggesting that she soundproof the apartment. Despite being asked to consider the effects on her neighbors and despite being provided with an alternative "reasonable accommodation" to the no-noise rule, Lesser refused to abate the noise or even properly soundproof her apartment.

As set forth herein, the Rutherford acted properly when it (i) asked Lesser to abate the noise that her flock of parrots was creating, (ii) suggested a different method as a "reasonable accommodation" instead of Lesser's unreasonable one and (iii) commenced a holdover proceeding under New York law when Lesser did not cure the violations of the Rutherford's rules and regulations.

With respect to the Government's retaliation claim, brought pursuant to 42 U.S.C. §3617, there is also no issue of material fact which should warrant a trial. Among other shortcomings with this claim, none of the alleged acts undertaken had any adverse effect on Lesser. Nor can the Government prove that there is any retaliatory motive, let alone any causation, in the ministerial act of the Rutherford's managing agent having placed legal fees on Lesser's tenant ledger as they were incurred in accordance with the long-standing provisions of the Proprietary Lease, and the corporate practice, which were in place long before Lesser even acquired her ownership interest in apartment 5J in 1999. Nor is there any adverse action, retaliatory motive or causal link in the Rutherford's denial of the purchase application for a third party buyer to become the owner of apartment 5J. In fact, the record demonstrates that the Rutherford would have benefitted had it approved the application by, among other benefits, receiving a significant fee upon transfer. Because the purchase application was incomplete and misleading, the Rutherford board voted to deny the buyer, who did not present himself as the kind of trustworthy or careful applicant who

could abide by paragraph 24 of the Proprietary Lease which requires all lessees to uphold the cooperative purposes for which the Rutherford was incorporated.[1] Like the claim of housing discrimination for an alleged failure to provide a "reasonable accommodation", the Government's claim for retaliation fails because it would have this Court transform the ordinary activities of a corporation into coercive and threatening acts, and acts of intimidation and interference, simply because a tenant/shareholder filed a claim with HUD.  This is not the intent of the statute.

As to Mr. Ramadei, summary judgment dismissing the Complaint should be granted as there is nothing in the record demonstrating any issue of material fact which could warrant a trial. Indeed, an examination of the Complaint reveals that other than his name appearing in the caption, there is absolutely nothing further said about him. Mr. Ramadei is but one of five members of the Rutherford's Board of Directors and had no control over how the Board voted on either the noise issues, the buyer's purchase application, or on the standard act of the managing agent to transfer legal fees incurred to a specific tenant's ledger.

For these reasons, and those more fully set forth herein, summary judgment dismissing the Complaint should be granted.

## LEGAL STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir.

---

[1] The Court should also dismiss the Government's claim of "retaliation" relating to charges for legal fees the Rutherford incurred for two 2015 warning letters that were sent to Ms. Lesser. Not only have those charges been removed from Lesser's maintenance statement, but charges were initially sent to Lesser and her attorney in December 2016, which was a year and a half *before* any claim was filed with HUD.    Livingston Dec. Ex. II, SOF ¶ 75.

4

2006) (quoting Fed. R. Civ. P. 56(c)).  "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Shade v. Hous. Auth. of the City of New Haven*, 251 F.3d 307, 314 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The opposing party may not rest "merely on allegations or denials" of the factual assertions of the movant. Fed. R. Civ. Pro. 56(e); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,* 374 F.3d 56, 59-60 (2d Cir. 2004).  It may not rely on its pleadings or merely unsupported allegations. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). It must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment may be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'  *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.,* 11 F.4th 55, 61 (2d Cir. 2021) (internal citations omitted). Here, no rational trier of facts could examine the record and conclude that the Defendants either denied any request for a reasonable accommodation or retaliated against Lesser.

## FACTUAL BACKGROUND

### 1.    The parties

Defendant Rutherford Tenants Corp. is a New York City cooperative housing corporation, and owns the building and land located at 230 East 15th Street, New York, New York (the "Building"). Ramadei Decl. ¶ 3; Compl. ¶ 8; SOF ¶ 1. Co-Defendant James Ramadei is a member of its Board of Directors, and is currently the board president, though he was not always the president.  SOF ¶ 2; Ramadei Decl. ¶¶ 1, 93.

In 1999, Meril Lesser ("Lesser"), who acquired the stock and proprietary lease for apartment 5J, moved in, together with two birds. Compl. ¶11, SOF ¶4; Ramadei Decl. ¶ 14.  When

Lesser moved into the Rutherford, she signed a lease which stated that she would not "permit or suffer any unreasonable noise or anything which will interfere with the rights of other lessees". SOF ¶¶ 3, 4, 18, 19. The Proprietary Lease also includes House Rules which prohibit noise that "disturbs the quiet enjoyment of other occupants of the building", and a breach of the House Rules is a breach of the Proprietary Lease. Compl. ¶16; SOF ¶ 18-22.

### 2.    The Rutherford's Pet Policies, Other Rules, and the History of the Birds

Since Rutherford was a "pet-friendly" building, Lesser required no permission from the Rutherford to maintain those two birds, or any birds, in her apartment. SOF ¶ 6; Ramadei Decl. ¶¶16,17; Ex D, Page 28.

Over time, as one bird would die, Lesser replaced it with another. SOF ¶ 7. As with the initial birds in 1999, no permission was required for any replacement animal.  SOF ¶ 6; Ramadei Decl. ¶¶16,17; Ex D, Page 28.  By January 2015, Ms. Lesser had two parrots named Layla and Ginger. [2] SOF ¶ 7.

The circumstances concerning Lesser's ownership of parrots changed in or about the beginning of 2015 when she brought home a third parrot named Curtis, which she acquired from a rescue bird center in Virginia. Ramadei Decl. ¶ 20; SOF ¶ 10-11. Lesser testified at her deposition that she acquired Curtis simply because she wanted it.[3] Ramadei Decl. ¶ 20, Ex D Page 141; SOF ¶ 11.

The Proprietary Lease at paragraph 24 requires that all lessees uphold the cooperative purposes for which the Rutherford was incorporated. Ramadei Decl., Ex. B; SOF ¶ 26. The Proprietary Lease at paragraph 16 requires that no transfer of any lease occur unless the board

---

[2] Ginger, however, was originally purchased by Lesser for her mother who rejected the bird. Therefore, Lesser kept it along with Layla. Ramadei Decl. Ex D, p 29, SOF ¶ 7.
[3] SOF ¶ 11, Ramadei Decl. ¶ 20, Ex D, Page 141.

HF 15048051v.1

issues its written approval for any such transfer. Ramadei Decl., Ex. B; SOF ¶ 25. The Proprietary Lease at paragraph 28 requires that a lessee reimburse the Rutherford for its legal fees, on demand, as additional rent, in the event that a lessee is in default of the lessee's obligations under the Proprietary Lease. Ramadei Decl. Ex. B; SOF ¶ 27.

### 3.    The Neighbor Complaints, and the Notices

With the arrival of Curtis, for the first-time since 1999, neighbors throughout the building began complaining to Building management and the staff about the parrots' incessant screeching. Ramadei Decl. ¶ 21, Exs. E, F, and G; Kullen Decl. ¶¶ 3-9; SOF ¶ 12, 17. The screeching was heard coming from Lesser's apartment at all hours of the day and night. Ramadei Decl. ¶21; Ex I, Pages 43-223; Kullen Decl. ¶3.

The unrefuted testimony of Lesser's next door neighbor Charlotte Kullen, clearly demonstrated that the loud constant, unrelenting screeching from the parrots caused her to be sleep deprived and stressed to the point when her health was adversely affected. Ramadei Decl. ¶21; Ex I, Pages 43-223; Kullen Decl. ¶3-7. Kullen has been under the care of dental and medical professionals caused by sleep deprivation and stress which resulted in dental problems, issues with her jaw, headaches and neurological problems all caused by the stress. Ramadei Decl. ¶21; Ex I, Pages 43-223; Kullen Decl. ¶3-7, see also Ramadei Decl. ¶ 28.   Similarly, Lesser's neighbors Marcia Okon was stressed out by the noise to the point she wanted to sell her apartment and ceased inviting guests into her home. Ramadei Decl., Ex Q. Pages 173-174; SOF ¶ 44,45.

In response to the numerous complaints, in 2015, the Rutherford's management company sent several warning letters to Lesser about the noise complaints and requested that she take steps to abate the noise. Ramadei Decl. Exs. J and K; SOF ¶ 28. The warning letters advised that if the noise wasn't abated, that Lesser would be responsible for the co-op's legal fees in accordance with

her Proprietary Lease. *Id*. Rutherford never requested that the parrots be removed or separated only -- that the noise be abated. *Id*.; see also SOF ¶ 29.

In response to the warning letters, and despite the complaints from the shareholders, Ms. Lesser never undertook to properly soundproof her apartment or take any steps to abate the noise caused by these parrots. Ms. Kullen, and indeed her other neighbors', ability to use and enjoy their apartments were deleteriously affected by the unabated noise from apartment 5J. Ramadei Decl. ¶21; Ex I, Pages 43-223; Ex P, Page 173; Ex. Q, Page 174; Kullen Decl. ¶¶3-7, see also Ramadei Decl. ¶ 28.

Unsurprisingly, the complaints from the neighbors continued. Ramadei Decl. Exs E, F, and G; SOF ¶ 35. Instead of taking meaningful steps to cure the problem, Lesser had her attorneys write a threatening letter to her neighbor, Charlotte Kullen, who lived next door and who was one of a number of individuals who complained to Management. Ramadei Decl. ¶ 35, Ex. N.

Lesser had the same attorney write a second letter of complaint to the Rutherford's management company. Ramadei Decl. ¶ 39, Ex. P; SOF ¶ 37. In this letter, dated September 15, 2015, Lesser's attorney acknowledged that his client, Ms. Lesser, was aware of the noise since she was given an audio recording of the parrots. *Id*. However, Lesser's attorney claimed, with no support, that the sound recording of the parrots had been "edited". *Id*. He further incorrectly claimed that Lesser had "special permission" of the Board to have birds in her apartment when she moved into the building. *Id*. This claim was inaccurate since Rutherford was a pet friendly building no permission was needed to have animals in the Building. The letter dated September 15, 2015 from Lesser's attorney never mentioned that she had a disability or that the parrots were emotional support animals. *Id*., SOF ¶40.

When Lesser refused to uphold her obligations to curtail the noise and cease disturbing her neighbors in accordance with her Proprietary Lease and House Rules, a Notice to Cure was sent. Ramadei Decl. ¶ 33; SOF ¶ 55.  Lesser understood that in order to comply with the Notice to Cure, all she had to do was to abate the noise. Ramadei Decl.  Ex D, Page 111; SOF ¶ 62.  New York law, even after a Notice to Cure is sent, and a Notice of Termination is served, and even after a Petition is commenced, a tenant always has a right to cure the default. SOF ¶ 66.

In March 2016, in response to the Notice to Cure, Lesser's attorney sent a letter to Rutherford's attorney together with a letter from a psychiatrist, Dr. Adele Tutter. Ramadei Decl. Ex. X; SOF ¶56. This was the first time it was ever alleged that the parrots were emotional support birds. SOF ¶ 56.

The letter from the psychiatrist did not appear to meet the legal requirements. For example, did not demonstrate a required nexus between Lesser's alleged disability and the need for emotional support animals to maintain the use of her apartment.   SOF ¶¶ 56, 57. Moreover, the psychiatrist's letter was written in a way to give the reader the false impression that the three parrots were *long-term* companions and that they could not be separated. SOF ¶ 57   However, in fact, Curtis had only been acquired a year before.   SOF ¶¶ 10-12.   Purely as a factual matter, the birds were not all long-term companions, because Curtis had only joined the flock in the first quarter of 2015.   SOF ¶ 10.

The Board offered to meet with Lesser without attorneys present to resolve the matter. Ramadei Decl. Ex . V; SOF ¶ 53. Lesser refused to meet with the Board to discuss a resolution. Ramadei Decl. Ex . W; SOF ¶ 54.

As a result of Lesser's failure to heed the two warning letters, a Notice to Cure, and an offer to meet, the Board had no choice but to commence a proceeding in Housing Court. Ramadei Decl. Ex. M, SOF ¶ 63.

Like the warning letters, and the Notice to Cure, the proceeding in Housing Court did not seek eviction of Lesser due to any violation of a "no-pet" rule in the Building. Ramadei Decl. Ex M, SOF ¶ 63. Instead, the Housing Court proceeding was predicated on Lesser's violation of the no-noise rule at the Building. *Id.*

Lesser submitted an Answer to the Housing Court proceeding seeking her eviction unless she cured the noise. Lesser in her Answer *never* alleged she had a disability nor a need for emotional support animals. Months later she changed her position, amending her Answer to allege the need for three parrots as emotional support animals and requested an unspecified reasonable accommodation from Rutherford to change its rules, practices and policies. SOF ¶¶ 65, 66.

### 4.    The Proposed Sale of the Apartment

Lesser acknowledged to HUD that the Rutherford, a residential housing corporation, has a standard process for approving and reviewing sales applications. SOF ¶68, 69, 70. Rutherford's Proprietary Lease at paragraph 16 states that no transfer of the stock and lease for any apartment can occur without the Board of Directors' approval. Ramadei Decl. Ex. B, SOF ¶25. The Rutherford's rules require that upon the transfer of an apartment, the seller pays to the Rutherford a "flip tax", i.e. a fee upon transfer. Ramadei Decl. ¶83; SOF ¶74.

The Rutherford's Proprietary Lease at paragraph 24 requires that all shareholders promote the cooperative purpose for which the Rutherford was incorporated. Ramadei Decl. Ex. B, SOF ¶26. It is the Rutherford's standard business practices that prospective applicants are reviewed, not solely based on their finances, but whether a prospective buyer would be the kind of person

who will join our community with the willingness to uphold paragraph 24 of the Rutherford's Proprietary Lease. Ramadei Decl. ¶ 80, Ex. B; SOF ¶74.

The buyer's package, which was submitted originally submitted by a trust, was insufficient on two occasions, and revisions were requested. Ramadei Decl. ¶ 97. The buyer's package finally submitted and after it was independently reviewed by four board members, the application was not approved. Ramadei Decl. ¶ 110.

The board did not have confidence in the prospective buyer's truthfulness, interest in being a member of the community or in actually purchasing the apartment due to the fact that there were inconsistencies in the application, the application was careless, and there were omissions and a material misstatement of income. SOF ¶79. As Lesser acknowledged, finances alone are not the only consideration for the Rutherford's board of directors. SOF ¶69.

**5.    The Legal Fees Initially Placed on Lesser's Rent Ledger**

Lesser's Proprietary Lease, as with all shareholders of the Rutherford, includes a provision that in the event of a breach of the lease, the Rutherford is entitled to collect its legal fees and costs from a tenant as additional rent. Ramadei Decl. Ex. B. In accordance with Rutherford's standard operating procedure, and without the need for any direction from the Board of Directors, the managing agent of the Rutehrford will regularly "move" legal fees incurred on to the ledger of any tenant to which those fees were attributable. Ramadei Decl. Ex. B; n. 6; SOF ¶30. Lesser was notified by the managing agent of this standard process when the initial warning letters were sent. Id. SOF ¶ 31.

The first-time legal fees were asserted was in December 2016, prior to her filing with HUD. Ramadei Decl. Ex. B; n. 6; Livingston Decl. Ex II; SOF ¶75. All legal fees were all removed from Lesser's ledger prior to the commencement of this case. Compl. 39, SOF ¶ 32. Lesser has never

paid any legal fees to the Rutherford for legal fees in conjunction with her defaults relating to the noise from the parrots. SOF ¶ 33.

## FRAMEWORK FOR THE GOVERNMENT'S CLAIMS

On January 15, 2021, the HUD Secretary (the "Secretary") issued a charge of discrimination against Defendants pursuant to 42 U.S.C. § 3610(g)(2)(A). Compl. ¶ 48. Defendants elected, pursuant to 42 U.S.C. § 3612(o) to have the claims asserted in HUD's charge of discrimination decided in a civil action in United States District Court instead of in an administrative hearing. *Id.* ¶ 49. The Secretary consequently authorized the Attorney General to file this action on Lesser's behalf pursuant to 42 U.S.C. § 3612(o)(1). *Id.*

## ARGUMENT

### 1.    Lesser Was Not Denied a Request for A Reasonable Accommodation

Pursuant to the FHA, it is unlawful" to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling". 42 U.S.C.A. § 3604 (f)(3)(B).

The Plaintiff has the burden to show that (1) Lesser suffers from a disability as defined by 42 U.S.C. §3602(h) and 24 CFR 100.21; (2) Defendants knew of the disability; (3) Lesser requested a reasonable accommodation Lesser's ability to enjoy her apartment and Defendants refused to make the accommodation, and that the reasonable accommodation was denied. *See e.g.* *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014); *Bentley v. Peace and Quiet Realty*, 367 F. Supp. 2d 341, 344-45 (E.D.N.Y. 2005).

To make out a prima facie case, a plaintiff must "give the [defendants] an opportunity to accommodate her," and to do so, "defendants must have had an idea of what accommodation [plaintiff] sought prior to their incurring liability for failing affirmatively to grant a reasonable

accommodation." *Collado v. 946 Bushwick Ave., LLC,* No. 16-CV-7173, 2017 WL 2838143, at *5 (E.D.N.Y. June 30, 2017) quoting Taylor, 690 F.3d at 49.

The "[r]easonableness analysis" is "'highly fact-specific, requiring a case-by-case determination'." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016), citing to *Hovsons, Inc. v. Twp. of Brick,* 89 F.3d 1096, 1104 (3d Cir. 1996) (*quoting United States v. Cal. Mobile Home Park Mgmt. Co.,* 29 F.3d 1413, 1418 (9th Cir. 1994)). "A requested accommodation is reasonable where the cost is modest and it does not pose an undue hardship or substantial burden on the rule maker." *Austin*, 826 F.3d at 630, *citing to Olsen v. Stark Homes, Inc.,* 759 F.3d 140, 156 (2d Cir. 2014), and Joint Statement on Reasonable Accommodations at 7 "(explaining that accommodation is not reasonable "if it would impose an undue financial and administrative burden on the [rule maker] or *it would fundamentally alter the nature of the [rule maker's] operations*") (emphasis added).

A reasonable accommodation is "one that gives the otherwise qualified plaintiff with disabilities meaningful access to the programs or services sought." *Sinisgallo v. Town of Islip Housing Authority,* 865 F.Supp.2d 307, 341 (E.D.N.Y. 2012). But, the requirement to provide a reasonable accommodation does not entail an obligation to do everything humanely possible to accommodate a disabled persons. *Bronk v. Ineichen,* 54 F3d 425 (7th Cir. 1995). Nor does a a defendant "have to provide a disabled individual with every accommodation" requested, or even with "the accommodation of his choice." *McElwee v. Cnty. of Orange,* 700 F.3d 635, 641 (2d Cir. 2012). Indeed, as explained by the *McElwee* court, "[r]equiring others to tolerate misconduct" is not a reasonable accommodation. *Id*. at 645.

Moreover, HUD's own guidelines, in place at the time of Lesser's request state:

> A reasonable accommodation request may be denied if the animal
> in question poses a direct threat to the health of others that cannot

be reduced by a reasonable accommodation or if the animal fundamentally alters the nature of the housing provider's services FHEO-2013-01 issued April 25, 2013 (page 4).[4]

As the 2013 HUD Guidelines demonstrate, a landlord is entitled to consider the repercussions of allowing an animal which causes a major disturbance to other tenants. Case law also bears this out.

For example, if animals are particularly disruptive, or the tenant fails to take proper measures to ensure that the animals do not bother other tenants, then the landlord can be justified in denying the accommodation or filing for an eviction. *See e.g. Woodside Village v. Hertzmark*, 1993 WL 268293 (Conn June 22, 1993)(finding that a federally assisted housing complex did not violate the FHA by evicting a resident with mental illness from failing to take care of his dog in designated areas).

Even where animals ae not involved, other courts have also concluded that it is not discriminatory to require that an allegedly disabled tenant abate noise, and, where that tenant fails to do so, for the landlord to commence an eviction proceeding to enforce the noise guidelines. *See e.g. Andover Hous. Auth. V. Shkolnik, 443 Mass. 300, 311, 820 N.E.2d 815, 824 (2005).*

This holding from Massachusetts is equally applicable in New York State. Inaction by a landlord who does not take steps to enforce New York's statutory warranty of habitability will be subject to claims by other tenants for failure to uphold the landlord's duties. *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 95 (2d Cir. 2021) (in concurrence) quoting *Park W. Mgmt. Corp. v. Mitchell,* 47 N.Y.2d 316, 325, 327  (1979); see also Restatement (Second) of Property: Landlord and Tenant § 6.1 (1977).  It is black letter law, as explained by the concurrence in *Francis*, that New York law obligates a landlord to address noise complaints and courts have found a landlord

---

[4] These Guidelines were revised in 2020 but are not relevant here. HUDAsstAnimalNC1-28-2020.pdf

liable for breaching the statutory warranty whenever it "deprive[s] [tenants] of the quiet enjoyment of their apartment" by "fail[ing] to take any effective steps to abate" detrimental conditions created by other tenants "despite having ample notice." *Francis,* 992 F.3d 67 at 95 (in concurrence); See also RPL 235-B.

Here, because to find to the contrary would mean that this Court would be requiring other shareholders at the Rutherford to waive their rights under New York's statutory warranty of habitability, which is not possible, under RPL 235-B(2), Lesser's request was per se unreasonable.

The unrefuted testimony of Lesser's next door neighbor Charlotte Kullen, clearly demonstrated that the loud constant, unrelenting screeching from the parrots caused her to be sleep deprived and stressed to the point when her health was adversely affected. Kullen has been under the care of dental and medical professionals caused by sleep deprivation and stress which resulted in dental problems, issues with her jaw, headaches and neurological problems all caused by the stress. As HUD has determined, affecting the health of another justifies why an emotional support animal should not be permitted. Similarly, Lesser's neighbors Marcia Okon was stressed out by the noise to the point she wanted to sell her apartment and ceased inviting guests into her home.

In the instant case, there is no material issue of fact in dispute that Lesser wanted to be permitted with an exception to the "no-noise" rule at the Building. Nothing else was ever demanded. Obviously, such a change to permit the noise to continue would be to the detriment of the other residents, would constitute a violation of the Rutherford's obligations under their leases, and a violation under New York's Real Property Law and under New York's common law, which all guarantee a right to a tenant to have the quiet enjoyment of their homes. Therefore, Lesser's request was unreasonable on its face and Rutherford did not have to grant it. Moreover, Rutherford suggested a reasonable accommodation by encouraging Lesser to submit an alteration agreement

to have her soundproof her apartment. She refused to do so. Here, Lesser makes no showing that she had any interest in complying with the terms of her lease by not disturbing her neighbors. In fact, the evidence plainly suggests otherwise.

Even if, assuming without conceding, that the Court finds that the Government has borne its burden, because the Defendants have borne their burden to show legitimate, nondiscriminatory reasons for their conduct, and because these reasons cannot be shown to be pretextual, summary judgment is warranted in favor of Defendants. *See Birch Fam. Servs., Inc. v. Wlody,* No. 21-1553, 2022 WL 1468160, at *1 (2d Cir. May 10, 2022).

For these reasons, the reasonable accommodation claim should be dismissed.

### 2.    There was No Retaliation against Lesser

Under the FHA, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted" under the FHA.   42 U.S.C. § 3617. Unlike a claim under Subsection 3604(f)(3), a retaliation claim *requires* a showing of a particular state of mind, *i.e.,* a retaliatory motive. *Austin v. Town of Farmington*, 826 F.3d 622, 630–31 (2d Cir. 2016) (emphasis added).

Courts parsing the language of § 3617 have determined that the words "on account of" require that the Plaintiff bear its burden to establish but for causation, a very high standard. *Mueller v. Sylacauga Hous. Auth.*, No. 1:20-CV-00029-SGC, 2022 WL 4538457, at *12 (N.D. Ala. Sept. 28, 2022), appeal dismissed, No. 22-13663-D, 2022 WL 18492131 (11th Cir. Dec. 1, 2022) citing to *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177 (2009); *see also Kris v. Dusseault Fam. Revocable Tr.*, No. 18-CV-566-LM, 2022 WL 867990, at *5 (D.N.H. Mar. 23, 2022) (the legal standard for establishing causation under the FHA's retaliation provision is under a "but-for"

standard); *Taylor v. Nat'l Invs., Ltd.*, No. CV 17-117 WES, 2022 WL 306367, at *7 (D.R.I. Feb. 2, 2022) (same); *Campos v. HMK Mortg., LLC*, 458 F. Supp. 3d 517, 532 (N.D. Tex. 2020) (same).

An adverse action under § 3617 is conduct that a reasonable person would view "as coercive, intimidating, threatening, or interfering with the exercise of her protected right under the FHA." *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018) (dismissing a retaliation claim which was based on a condominium board's business practice of updating owners about litigation).

In the instant situation, Plaintiff has not, and cannot, demonstrate any of the elements of a retaliation claim, whether it be "but-for" causation, adverse action, or that intentional discrimination motivated the Defendant's conduct. As set forth in the supporting documents, the placement of legal fees on her account was nothing more than a ministerial act by the managing agent in accordance with the Proprietary Lease. Moreover, the review, and rejection of a buyer, was also undertaken in the ordinary course of Rutherford's practices in accordance with the Proprietary Lease.

As set forth herein, there is no issue of material fact that could warrant a trial because neither of the two alleged issues of alleged "retaliation", to wit, denying the single proffered buyer of the apartment, or of the placement of legal fees on Lesser's account (which were removed prior to this action being filed) constitute any adverse action as to Lesser of sufficient magnitude to "permit a finding of intimidation, coercion or interference". *Lynn v. Village of Pomona,* 373F Supp 2d 418 (S.D.N.Y 2005). Lesser remains, to this day, the shareholder of the apartment, with full rights, since the Housing Court proceeding has been stayed. If Lesser wanted to sell her apartment, she could have simply proposed another buyer, who met the qualifications that she recognized were required in order to obtain an interview with the board of directors.

HF 15048051v.1

In this instant case Rutherford satisfied its burden to establish that the rejection of the buyer (not Lesser) was based on legitimate reasons in Rutherford's ordinary course of business, out of concerns for the buyer's qualifications to be a member of the Rutherford community, and were not motivated by any retaliatory intent. The rejection of the proposed buyer had no effect of Lesser's ability to use or occupy the subject apartment whatsoever. Nor has Lesser to this day ever been restricted from producing another qualified buyer for her apartment.

As Lesser acknowledged, and as she explained to HUD, some seven months <u>before</u> the buyer's application was submitted, the quality of the information in a buyer's packages determines whether or not the Board will set up an interview. Lesser's explanation to HUD as to the process for board package reviews, in Rutherford's ordinary course, is the very standard that Rutherford uses for its review of any purchase application.

The Board of Rutherford consists of volunteers members who donate their time and energy for the best interests of the corporation. They use their best efforts to review applications for buyers in the ordinary course. Some buyers can be approved. Others, like this prospective buyer who did not demonstrate, through his application, a genuine interest in living at the Rutherford, or his ability to be a trustworthy and cooperative member of the Rutherford community, are rejected. Rutherford had valid and ample reasons to reject this buyer and the fact that the seller had submitted a complaint to HUD played no role in the ordinary standards of review for purchase applications, which Ms. Lesser herself acknowledged.

Moreover, it took four votes of the five-person Board of Directors to turn down a buyer. Defendant Ramadei only had one vote and could not therefore control the process, particularly since the members of the Board of Directors independently vote to reject or accept a buyer and do not consult with one another before the vote.

Additionally, the Plaintiff has also failed to establish any retaliatory motive or adverse with respect to the managing agent's ministerial placement of legal fees (and their subsequent removal prior to the filing of this complaint) as a contractual obligation by Lesser in accordance with her agreement under the Proprietary Lease that could constitute the kind of adverse action of sufficient magnitude to permit a finding of intimidation, coercion or interference.

Under the Government's theory, anything done by a housing provider, even the ordinary activities relative to its ongoing concerns, and even if there is no materially adverse effect on a tenant, are "retaliatory". The Government's claims do not meet the high standard for finding retaliation; therefore, the claim fails.

### 3.    Defendant James Ramadei Should Be Dismissed From the Complaint

As set forth above, James Ramadei is but one of several directors of the Rutherford, had no independent decision-making authority, is not alleged to have taken any independent action against Lesser and should therefore be dismissed from the complaint since there is no material issue of fact which could warrant a trial as to him.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment together with such other relief in the Defendants' favor as the Court deems just and proper under the circumstances.

Dated:  New York, New York
        June 21, 2023

**HERRICK, FEINSTEIN LLP**


By: */s/ Peter I. Livingston*

Peter Livingston, Esq.
Deborah Koplovitz, Esq.
Two Park Avenue
New York, New York 10016
(212) 592-1400
*Attorneys for Defendants*

HF 15048051v.1