DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States of America
By: DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone (212) 637-2733
Facsimile (212) 637-0033
david.kennedy2@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUTHERFORD TENANTS CORP. and JAMES RAMADEI,<br><br>Defendants. | **COMPLAINT**<br><br>21 Civ. ____ (_____) |

Plaintiff the United States of America, by its attorney Damian Williams, United States Attorney for the Southern District of New York, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action for declaratory relief, injunctive relief, and monetary damages under the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq*. (the "FHA"), brought by the United States of America on behalf of Meril Lesser ("Complainant" or "Ms. Lesser"), to redress discrimination on the basis of disability.

2. As alleged more fully below, defendants Rutherford Tenants Corp. ("Rutherford") and James Ramadei ("Ramadei") (collectively, "Defendants") unlawfully discriminated against

Complainant, who requires emotional support animals to assist her with her disabilities. Specifically, Defendants sought to evict Complainant for living with emotional support animals and, even though Complainant secured a purchaser for her co-operative apartment, Defendants retaliated against Complainant by wrongfully refusing to approve the sale, and preventing her from mitigating her damages.

3. Defendants' conduct violates the FHA and should be declared unlawful and enjoined, and appropriate monetary damages should be awarded.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there, and the property that is the subject of this suit is located there.

## PARTIES AND PROPERTY

6. Plaintiff is the United States of America.

7. Complainant Meril Lesser is an individual with a disability, 42 U.S.C. § 3602(h), and is an "aggrieved person" within the meaning of the FHA, 42 U.S.C. § 3602(i).

8. The Rutherford is a residential cooperative apartment building that contains 175 units, located at 230 East 15th Street in New York, New York. Defendant Rutherford is the shareholder cooperative association.

9. Defendant Ramadei was at all times relevant to this complaint the President of the Cooperative's Board of Directors (the "Board").

10. The residential units at The Rutherford, 230 East 15th Street, are "dwelling[s]," as defined by 42 U.S.C. § 3602(b).

**FACTUAL ALLEGATIONS**

11. From 1999 to the present, Complainant has been a shareholder of The Rutherford and occupied or maintained Apartment 5J.

12. At all times relevant to this complaint, Complainant has been a person with anxiety and depression, and has been subject to panic attacks. Complainant's mental impairments interfere with major life activities, including but not limited to her ability to think, sleep, and care for herself.

13. At all times relevant to this complaint, Complainant has kept parrots as emotional support animals to ameliorate the effects of her anxiety and depression. Caring for her parrots provides Complainant with purpose and a sense of structure to perform daily tasks. Complainant's interactions with her parrots soothe and comfort her, making her feel safe and enabling her to remain calm in the face of debilitating panic attacks. Moreover, Complainant operates a jewelry business from her home and the parrots provide a calming environment in which she can work.

14. At the time Complainant moved into The Rutherford in 1999, she disclosed that she kept two parrots as emotional support animals.

15. Defendants do not have any policy or procedure for evaluating requests made by shareholders to reside with assistance animals.

16. At the time Complainant moved into The Rutherford in 1999, she signed a proprietary lease. That lease included a provision stating that "[t]he Lessee shall not permit or

suffer any unreasonable noise or anything which will interfere with the rights of other lessees." In addition, the "House Rules" for The Rutherford prohibit noise that "disturbs the quiet enjoyment of other occupants of the building."

17. Between 1999 and January 2015, there were no reported complaints of noise emanating from Complainant's apartment. In January 2015, Complainant began keeping three parrots in her apartment.

18. In a letter dated May 15, 2015, Halstead Management, the management company for Rutherford, advised Complainant that Rutherford had received complaints about noise coming from her apartment, allegedly caused by Complainant's emotional support birds.

19. By email dated May 26, 2015, Complainant advised one Board member that she had spoken to Halstead Management to see if the Board, along with any of the neighbors with a grievance, could arrange a time to meet to address the issue. Complainant advised that she would be plugging open outlets and adding more carpeting to her apartment to reduce any noise. Complaint further requested any documentation regarding the dates, times, and duration of the alleged disturbances. Complainant did not receive a response to this request.

20. By letter dated August 19, 2015, Halstead Management advised Complainant of allegations that the noises emanating from her apartment had not been abated, and that she was in violation of the noise level limit, as stated in the Cooperative's house rules.

21. By letter dated September 2015, to Halstead Management, an attorney for Complainant noted that Complainant had resided at The Rutherford for over 16 years without complaints, and that according to The Rutherford's House Rules, residents who have complaints about excessive noise are to make their complaint in writing to the managing agent. The attorney for the Complainant noted that Complainant had asked on May 26, 2015, to receive copies of the

written complaints against her, but still had not received any copies, and that Complainant had offered to meet with the Board and any affected residents to discuss the complaints, but received no response.

22. From October 9, 2015, through March 4, 2016, the New York City Department of Environmental Protection, Bureau of Environmental Compliance, Air and Noise Enforcement Department ("NYC DEP") received 26 noise complaints about Complainant's apartment, all anonymous but suggesting that the complaints came from an adjacent apartment.

23. NYC DEP conducted a total of fifteen site inspections of the Complainant's apartment during varying hours of the morning, afternoon, evening, and night from October 13, 2015, through March 3, 2016. The first visit from NYC DEP was announced, but subsequent inspections were unannounced.

24. All fifteen NYC DEP inspections found that even though parrot sounds could be heard, there were no loud, unreasonable, or excessive noises; and the DEP issued no notices of any noise violations.

25. On February 2, 2016, the New York City Department of Health and Mental Hygiene, Bureau of Veterinary and Pest Control Services conducted an unannounced afternoon inspection of Complainant's apartment. Complainant's apartment passed the nuisance inspection.

26. Notwithstanding the fact that none of the sixteen inspections by municipal authorities substantiated the alleged nuisance complaints, Defendants issued a Notice to Cure to Complainant on or about March 7, 2016.

27. On or about March 28, 2016, an attorney for Complainant sent a letter to the Board addressing the Notice to Cure. The letter stated that prior to receipt of the Notice, Complainant had taken the following steps to reduce alleged objectionable noises from escaping

her apartment: plugging electrical outlets; installing more carpeting throughout the unit; always covering her birds' cages at night and whenever she left the apartment; and installing a professional sound panel to hang on the birds' cages. The letter further stated that a soundproof apartment door would be installed in her unit. Finally, the letter noted again that Complainant had made repeated requests to meet with any complaining tenants and/or the Board to address the noise complaint allegations, but those requests had been ignored.

28. The March 28, 2016 letter also expressly advised the Board that Complainant was a person with a disability who required emotional support animals, and attached a letter from Complainant's psychiatrist stating that:

> I am licensed by the state of New York to practice Medicine with a specialty in Psychiatry. I am writing to certify that Ms. Meril Lesser, [date of birth redacted], has a mental health related disability recognized by the Diagnostic and Statistical Manual, 5th Edition.
>
> Ms. Meril Lesser has been under my professional care for her mental health related disability since 2009, i.e. 7 years. I am thus intimately familiar with her history and with the functional limitations posed by her mental health-related issues, which interfere with her ability to manage what would otherwise be considered normal, but significant day to day situations. In order to function optimally, Ms. Lesser requires the presence of three emotional support animals: a bare eyed Cockatoo parrot named Layla (17 years old); a white fronted Amazon parrot named Ginger (15 years old); and a Goffins Cockatoo parrot named Curtis (20 years old). Two of these birds have been with her as long as she has lived in her current apartment, 17 years. It is important to emphasize that the presence of these animals is necessary for [ ] the optimal functioning of Ms. Lesser, [who] works from home, as their presence helps to mitigate the mental health symptoms she experiences. All three birds must be present as they are long-term companions of each other and cannot be separated without negative consequences.

A copy of the March 28, 2016 letter and its attachment is annexed hereto as Exhibit A.

29. By letter dated March 30, 2016, Defendants refused to accept Complainant's request for an accommodation, calling her request "irrelevant" and "misplaced."

30. On or about May 17, 2016, Defendants issued a Notice of Termination to Complainant with a vacate date of May 31, 2016.

31. On or about June 13, 2016, Defendants initiated a Notice of Petition for a Court Eviction hearing, which commenced on or about June 29, 2016, in the Civil Court of New York, Housing Part.

32. In mid-July 2016, Complainant moved out of her apartment at The Rutherford. Since that time and continuing to the present, Complainant has continued to pay monthly utility and maintenance obligations even though she has not lived in the apartment.

33. Beginning in June 2016 and continuing to the present, including court hearings in 2017 and 2018, Defendants have continued to prosecute the eviction against Complainant for keeping emotional support animals notwithstanding being on notice that Complainant requires emotional support animals for her disabilities.

34. Defendants' actions have exacerbated Complainant's psychiatric conditions and caused emotional distress.

35. Defendants' discriminatory actions were intentional, willful, and taken in disregard of the rights of Complainant.

36. On May 14, 2018, Complainant filed a timely complaint against Defendants with the Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610, alleging that Defendants' ongoing refusal to allow her live with her emotional support animals at The Rutherford, and their ongoing effort to terminate her right to reside at The Rutherford, constitute discrimination against her because of her disability. On December 16, 2020, Complainant advised HUD of allegations of unlawful retaliation based on the incidents described below in paragraphs 38-45.

37. By stipulation dated March 22, 2019, the parties stipulated to stay the housing court proceeding pending the result of the HUD investigation. Defendants have refused to dismiss the action despite their knowledge of Complainant's need for her emotional support animals.

38. Two months after Complainant filed her complaint with HUD, in July 2018, Defendants, for the first time, placed on Complainant's July 9, 2018 monthly maintenance bill a charge of $62,241. The charge was allegedly for legal costs incurred by Rutherford in the eviction proceedings, but constituted retaliation for Complainant's filing of a complaint with HUD.

39. Defendants continued to retaliate against Complainant by placing charges for legal fees on Complainant's maintenance bills, including the following: August 21, 2018 for $71,164.74; September 20, 2018, for $71,164.74; and October 25, 2018 for $72,588.04. Eventually, by May 1, 2019, Defendants removed the charges from Complainant's maintenance bills.

40. On or about March 1, 2019, Complainant listed her apartment for sale.

41. On August 16, 2019, Complainant entered a contract of sale for her unit with a prospective purchaser (the "Applicant") for the purchase price of $467,500.

42. The Applicant submitted his application to Defendants for their approval of the sale by October 11, 2019. On October 21, 2019, Defendants' management agent instructed the Applicant to submit additional information, which the Applicant submitted on October 25, 2019. Defendants never interviewed the Applicant.

43. On December 16, 2019, the Board denied the Applicant's application to purchase Complainant's unit. At the time of his application, the Applicant had a low debt-to-income ratio

of 17%. Moreover, his license to practice medicine was clear and active in the state of Florida. A background check of Applicant conducted by HUD in August 2020 yielded no criminal history, except for a traffic infraction, and no record of bankruptcy, sex offender registration, lien, outstanding judgment, or litigation.

44. During its investigation, HUD asked Defendants to provide a legitimate, non-retaliatory reason for their denial of the Applicant's application to purchase Complainant's apartment. Defendants refused to provide any reason or explanation for their decision.

45. As a result of Defendants' filing of an eviction action against Complainant and their retaliatory refusal to approve a qualified Applicant for purchase of Complainant's apartment, Complainant suffered actual damages, including lost sales opportunity, out-of-pocket expenses, and emotional and physical distress.

## PROCEDURAL BACKGROUND

46. The Secretary of HUD (the "Secretary") investigated the administrative complaint and attempted to conduct conciliation, without success, according to the requirements of 42 U.S.C. § 3610(a) and (b).

47. Based on HUD's investigation of the administrative complaint, the Secretary determined that there was reasonable cause to believe that Defendants discriminated against Complainant on the basis of disability.

48. On January 15, 2021, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2), charging Defendants with engaging in discriminatory housing practices and retaliation in violation of the Fair Housing Act.

49. On February 2, 2021, Defendants timely elected to have the charge decided in a federal civil action, pursuant to 42 U.S.C. § 3612(a) (*see* Exh. B). Following Defendants'

election, the Secretary authorized the Attorney General to file this action on Complainants' behalf, pursuant to 42 U.S.C. § 3612(o)(1). Through a series of tolling agreements, Defendants have agreed to toll the filing deadline to December 6, 2021.

**CLAIM FOR RELIEF**

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth in this paragraph.

51. Defendants violated the Fair Housing Act, 42 U.S.C. § 3604(f)(1)(A), (f)(2)(A), and (f)(3)(B), by making housing unavailable and discriminating against Complainant in the terms, conditions, and privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of her disability.

52. Defendants violated the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), by refusing to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling.

53. Defendants violated the Fair Housing Act, 42 U.S.C. § 3617, by coercing, intimidating, threatening, and interfering with Complainant on account of her having exercised or enjoyed her rights under the Act.

WHEREFORE, Plaintiff the United States requests that the Court enter judgment:

1. Declaring that Defendants' policies, practices and/or conduct as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*;

2. Enjoining Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with them, from:

(a) discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of a disability of that buyer or renter, in violation of 42 U.S.C. § 3604(f)(1)(A);

(b) discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2)(A);

(c) failing or refusing to make reasonable accommodations as required by 42 U.S.C. § 3604(f)(3)(B);

(d) coercing, intimidating, threatening, and interfering with Complainant on account of her having exercised or enjoyed her rights, in violation of 42 U.S.C. § 3617;

(e) failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Complainant to the position she would have been in but for the discriminatory conduct; and

(f) failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

3. Awarding monetary damages to Complainant, pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

4. Granting such further relief as this Court may deem just and proper.

The United States respectfully requests trial by jury.

Dated: New York, New York
12/6, 2021

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By: ______________________
DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2733
Facsimile: (212) 637-0033
Email: david.kennedy2@usdoj.gov

CLIENT'S COPY

HIMMELSTEIN, MCCONNELL, GRIBBEN
DONOGHUE & JOSEPH
ATTORNEYS AT LAW
15 MAIDEN LANE
NEW YORK, NY 10038

SAMUEL J. HIMMELSTEIN
KEVIN R. MCCONNELL
WILLIAM J. GRIBBEN
ELIZABETH DONOGHUE
SERGE JOSEPH
DAVID S. HERSHEY-WEBB

TEL (212) 349-3000 • FAX (212) 587-0744
WWW.HMGDJLAW.COM

JANET RAY KALSON
RONALD S. LANGUEDOC

DAVID E. FRAZER
OF COUNSEL

March 28, 2016

Via Email and Regular Mail
ROSEN LIVINGSTON & CHOLST LLP
275 Madison Avenue – Suite 500
New York, New York 10006
Attn: Andrew J. Wagner Esq.

Re.: **Meril Lesser; 230 East 15th Street Apt. #5J, New York, NY 10003**

Dear Mr. Wagner,

As you are aware, this firm has been retained by Meril Lesser, the long-term shareholder and proprietary lessee of the above referenced apartment. I write with regards to the Notice to Cure, ("Notice"), dated March 7, 2016, served by your office. This letter is written without prejudice to any defenses regarding the legal sufficiency, manner of service, or contents of the Notice.

Ms. Lesser purchased her apartment in 1999. At the time of her interview, Ms. Lesser informed the Board of Directors ("Board") that she had pet parrots and was informed that this was a "pet friendly" building and that her having parrots was therefore not an issue. Indeed, for the first sixteen years of her tenancy there were no complaints of any kind.

The Notice, in sum and substance, alleges that Ms. Lesser's pet parrots are the source of excessive noise which disturbs other tenants. While the Notice references "several complaints" and two letters purportedly sent by building management, the Notice is void of any factual specificity whatsoever. Indeed, the Notice's lack of factual specificity and conclusory allegations render it facially defective. *Cosmopolitan Broadcasting Corp. v. Miranda*, 143 Misc. 2d1, 539 N.Y.S.2d 265 (N.Y. City Civ. Ct. 1989); *3528 Broadway Corp v. Cepin*, 12/11/91 N.Y.L.J. 25 col. 3 (Civ. Ct. Kings Co.)(A notice that fails to set forth specific facts and simply sets forth legal conclusions is inadequate); *Spivak Realty Co., Inc. v. Svobodny*, 21 Misc. 3d 1147(A), 875 N.Y.S.2d 824 (Dist. Ct. 2008)(Notice fails to provide dates, times, names of tenants affected by the alleged nuisance and fact specific examples of the nuisance). In addition, the lack of detail prejudices our client's ability to respond to the Notice.

Notwithstanding the legal insufficiency of the Notice, the conduct complained of therein does not rise to the level of objectionable conduct and/or nuisance as a matter of law. "Nuisance imports a continuous invasion of rights--a pattern of continuity or recurrence of objectionable conduct." *Frank v. Park Summit Realty Corp.*, 175 A.D.2d 33, 34, 573 N.Y.S.2d 655 (1st Dept. 1991), *mod of other grounds* 79 N.Y.2d 789, 587 N.E.2d 287, 579, N.Y.S.2d 649 (1991). In order to prevail on a nuisance claim a landlord must establish that a tenant has engaged in behavior that threatens the life, health or safety of the owner or of other tenants. *Id.*

It is well-established that "we live in an urban setting and cannot expect a noise-free environment when we choose to live in New York City," *Gerber v. Gentry,* NYLJ, April 18, 1990, page 23, col. 1, (Civ. Ct., N.Y. Co.). "Apartment-house living in a metropolitan area is attended with certain well-known inconveniences and discomforts. The peace and quiet of a rural estate or the sylvan silence of a mountain lodge cannot be expected in a multiple dwelling." *Smalkowski v. Vernon*, 2001 N.Y. Misc. LEXIS 456 (Civ. Ct. Kings Co. 2001) *quoting Matter of Twin Elm Management Corp. v. Banks*, 181 Misc. 96, 97, 46 N.Y.S. 2d 952 (Mun. Ct., Queens Co., 1943)(Landlord sought to terminate a tenancy on the ground of nuisance, the nuisance consisting of the tenant's daughter allegedly practicing the piano twelve hours a day. The court dismissed the petition). Here, Ms. Lesser, who works from home and actively monitors her birds at all times, affirms that they vocalize loudly, if at all, for only a few minutes a day. Every night, at approximately 9 p.m. the birds are covered and they sleep, absent any noise, until the covers are removed in the next morning.

While Mrs. Lesser disputes the allegation(s) contained in the Notice to Cure, upon and, indeed, prior to receipt of the Notice, she took affirmative steps to reduce any and all alleged objectionable noise emanating from her apartment. Electrical outlets were plugged and more carpeting was installed throughout the unit. Ms. Lesser closely monitors her birds and always covers their cages at night and whenever she leaves the apartment. In addition, Ms. Lesser has purchased and installed a professional sound panel to hang on the birds' cages in an effort to reduce noise. Finally, at considerable expense, Ms. Lesser plans to have a soundproof apartment door installed in her unit.[1]

Significantly, Ms. Lesser has made repeated requests to meet with any complaining tenants and/or the Board in order to come to an amicable solution. Thus far her requests have been ignored. Indeed, in May, 2015, Ms. Lesser complained about noise emanating from her neighbor's apartment and suspects this neighbor, Charlotte Kullen, who resides in apartment 5K, is acting in retribution, is the primary person complaining. To the extent that other shareholders who are members of the Board have joined in these specious complaints, they are acting in bad faith and in violation of their fiduciary duties as members of the Board. It must be noted that inspectors from the New York City Department of Environmental Protection ("DEP") have been summoned to Ms. Lesser's apartment on several occasions, apparently by

---

[1] Annexed hereto is a contract with Emerald Doors Inc.

Ms. Kullen, and have not once issued a noise or any other violation. As such, what is presented is a tenant who has taken pro-active steps to remedy what appears to be a one-sided dispute with a single neighbor whose motive is retaliatory and whose complaints are not made in good faith and are not well founded.

Finally, Ms. Lesser suffers from a disability and her parrots serve as emotional support animals. Ms. Lesser's treating psychiatrist, Dr. Adele Tutter, emphasizes that the presence of these animals is necessary for my client's mental well-being.[2] Ms. Lesser hereby requests that you offer her a reasonable accommodation and not pursue any litigation based upon the Notice. Should this matter not be resolved, Ms. Lesser intends to file a complaint at the New York City Commission on Human Rights and/or interpose this defense in and/or seek a stay of any ensuing litigation your client might elect to pursue.

Again, it is our desire to amicably resolve this matter, as Ms. Lesser has been attempting to do prior to retaining us. There is no basis or reason to further escalate this situation, much less consider the commencement of a proceeding seeking Ms. Lesser's eviction. In the event a Petition is filed, Ms. Lesser's rights, including potential recovery of attorneys' fees, will be vigorously defended and pursued by this firm.

If there are any questions or concerns, please do not hesitate to contact me.

Sincerely,

Samuel Himmelstein

cc: Meril Lesser

RESPONSE TO NOTICE TO CURE FROM ATTORNEY.

RESPONSE FROM CO-OP.

---

[2] A letter from Dr. Tutter is annexed hereto.

ESA LETTER From PSYCHIATRIST DR. TUTTER

Adele Tutter, M.D., Ph.D.
300 Central Park West
New York, NY 10024
tel/fax 212/873 5190
atutter@mac.com

3.14.16

To Whom It May Concern,

I am licensed by the state of New York to practice Medicine with a specialty in Psychiatry. I am writing to certify that Ms. Meril Lesser, D. O. B. has a mental health related disability recognized by the Diagnostic and Statistical Manual, 5th Edition.

Ms. Meril Lesser has been under my professional care for her mental health related disability since 2009, i.e. 7 years. I am thus intimately familiar with her history and with the functional limitations posed by her mental health-related issues, which interfere with her ability to manage what would otherwise be considered normal, but significant day to day situations. In order to function optimally, Ms. Lesser requires the presence of three emotional support animals: a bare eyed Cockatoo parrot named Layla (17 years old); a white fronted Amazon parrot named Ginger (15 years old); and a Goffins Cockatoo parrot named Curtis (20 years old). Two of these birds have been with her as long as she has lived in her current apartment, 17 years. It is important to emphasize that the presence of these animals is necessary for for the optimal functioning of Ms. Lesser, works from home, as their presence helps to mitigate the mental health symptoms she experiences. All three birds must be present as they are long-term companions of each other and cannot be separated without negative consequences.

Thank you for accommodating Ms. Lesser's disability, according to the Americans with Disabilities Act.

Adele Tutter, M.D., Ph.D.

Board Certified, National Board of Psychiatry and Neurology
Assistant Clinical Professor of Psychiatry, Columbia University College of Physicians and Surgeons
New York State Medical License 190057

New York State Medical License 190057

UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
OFFICE OF HEARINGS AND APPEALS

| | |
|---|---|
| The Secretary, United States Department of Housing and Urban Development,<br><br>Charging Party,<br><br>On behalf of Meril E. Lesser,<br><br>Complainant,<br><br>v.<br><br>Rutherford Tenants Corp., and James Ramadei,<br><br>Respondents. | HUDOHA No. ____________<br>FHEO No. 02-18-9990-8 |

**To the Docker Clerk**

We have been retained to represent Respondents Rutherford Tenants Corp. and James Ramadei in connection with the charge of Discrimination asserted on behalf of Meril E. Lesser.

My clients have elected to have this matter tried in United States District Court for The Southern District of New York.

Please confirm receipt of this notice of election.

New York, New York
February 2, 2021

HERRICK, FEINSTEIN, LLP

By: ______________________
Peter I. Livingston
2 Park Avenue
New York, NY 10016
plivingston@herrick.com
212-592-1625
917-526-1635

cc: Docket Clerk – alj.alj@hud.gov
Meril E. Lesser – golayla@gmail.com
Meryl L. Wenig, Esq. – mwenig@itattorneys.com
cfreckleton@itattorneys.com

Iris Springer – iris.springer-elkerson@hud.gov
David Heitner – David.heitner@hud.gov
David Enzel – davidh.enzel@hud.gov
Elizabeth A. Singer – Elizabeth.singer@usdoj.gov
Kethleen M. Pennington – Kathleenm.pennington@hud.gov
Emily Shearer, Esq. -

HF 13670036v.1