*ROSEN LIVINGSTON & CHOLST LLP*
ATTORNEYS AT LAW
275 MADISON AVENUE, SUITE 500 • NEW YORK, NEW YORK 10016-1111
(212) 687-7770
TELECOPIER (212) 687-8030
EMAIL ADDRESS info@rosenlivingston.com
Writer's Email Address ajw@rosenlivingston.com

MORTON H. ROSEN
PETER I. LIVINGSTON
BRUCE A. CHOLST
MARY L. KOSMARK
ANDREW B. FREEDLAND
DEBORAH B. KOPLOVITZ
ANDREW J. WAGNER
ELLIOT J. COZ
KEMPSHALL C. McANDREW

S. DAVID HARRISON
Of Counsel

ALAN M. GOLDBERG
Special Counsel

INNA GRINBERG
REGINA GRANT
Paralegals

March 30, 2016

BY EMAIL AND REGULAR MAIL
Himmelstein, McConnell, Gribben Donoghue & Joseph
15 Maiden Lane
New York, NY 10038
Att: Samuel Himmelstein, Esq.

Re: Rutherford Tenants Corp. v. Lesser
Premises: 230 East 15th Street, Apt. #5J
New York, New York 10003
Our File: 5575-38

Dear Mr. Himmelstein:

This letter is in response to your letter dated March 28, 2016.

Please note that the issues raised in your letter are either irrelevant to the issues involved herein, or are legally erroneous.

For example, the lease defaults set forth in the Notice to Cure have nothing to do with the lack of consent to own a pet in general, and parrots in particular. Hence, your claim that your client has owned parrots since the inception of her tenancy is irrelevant.

Additionally, your claim that the Notice to Cure is devoid of any factual specificity and based solely on conclusory allegations is simply wrong. It is well settled that the test for determining the legal sufficiency of a predicate notice is one of "reasonableness in view of the attendant circumstances."[1] This standard is met when, as here, the predicate notice states facts that "inform the tenant of the factual and legal claims that must be met, thus enabling the tenant to interpose any available defenses."[2] Notably, the Appellate Division, First Department has expressly held that it is **not** necessary to recite specific names, dates, or times in predicate notices, since such details can be provided in a bill of particulars.[3] This standard has been easily met here, as the Notice to Cure alleges the date when complaints about your client's parrot commenced, described the nature of the complaints, and even attached copies of the letters sent to your client to the Notice itself. Additionally, since the specific lease provisions violated are specifically referenced in the Notice to Cure, there can be no doubt that the Notice to Cure is reasonable under the circumstances, since it provides both the legal and factual bases upon which the claims against your client are based. Thus, in the event this matter results in litigation, any attempt to dismiss the proceeding based upon a defective notice would be doomed to failure.

Your claim that the alleged conduct does not rise to the level of "objectionable conduct" or "nuisance" (each of which are typically noncurable defaults) is also irrelevant, since the Notice to Cure cites neither as the legal basis of your client's default. Rather, your client's default is a violation of applicable House Rules and Lease provisions that prohibits causing of disturbing noises in the building that interfere with the rights, comfort or convenience of other Lessees. Case law has firmly established that a landlord may terminate a lease if a tenant breaches a "substantial obligation" of her tenancy.[4] A "substantial obligation" may be either expressly stated

---

[1] *See, e.g., Hughes v. Lenox Hill Hosp.*, 226 A.D.2d 4 (1st Dep't 1996), *lv. den.*, 90 N.Y.2d 829 (1997).

[2] *City of N.Y. v. Valera*, 216 A.D.2d 237 (1st Dep't 1995).

[3] See *City of N.Y., supra*, at p. 238 ("…[N]o New York court at this appellate level has ever mandated that this requires an allegation of specific date or time of the tenant's misconduct…. Any further information necessary for preparation of a defense can be acquired through a bill of particulars."); *Pinehurst Constr. Corp. v. Schlesinger*, 38 A.D.3d 474 (1st Dep't 2007) ("Such allegations, although setting forth no names, dates or specific instances of the misconduct, describe a nuisance … with sufficient detail to have allowed tenant to prepare a defense….Further information … was appropriately provided in its bill of particulars.").

[4] See Finkelstein & Ferrara, Landlord and Tenant Practice in New York, § 13:40, *et. seq.*

in the lease, or inferred when the violation causes harm to the landlord or to the premises.[5] In fact, the courts have actually created a test to determine whether or not a lease obligation is "substantial."

The test was articulated in *Lumbsden v. Warden*,[6] as follows:

> The relevant inquiries on this issue are as follows: (1) Does the use materially affect the character of the building? (2) Does the use materially damage or burden the landlord's property? (3) **Does the use materially disturb the building's other tenants in the peaceful use of their apartment?** (*Ni: en v. Wang*, 105 Misc.2d 251, 253 Civ. NY, 19890).... [Citati n in original] [Emphasis supplied]

Here, your client's parrot is the source of several complaints by her neighbors. Moreover, the claim that her parrot makes disturbing noises at various times of the day and night, over a prolonged period of time, is more than sufficient to establish that the noise disturbances are excessive, unreasonable, and interfere with the rights of other shareholders to peaceable enjoyment of their homes. Of course, if your client factually disputes these allegations, or claims that this action is motivated by the Board's bad faith, these issues can only be resolved at trial.

Moreover, while your client may have taken certain actions to reduce the disturbing noises emanating from her apartment, said measures have proved unsuccessful to date.

Finally, even assuming, without conceding, that your client suffers from a disability that requires the presence of her parrots as emotional support animals, her request for a reasonable accommodation is misplaced, since it is axiomatic that a tenant is not entitled to harbor an animal in the premises that disturbs her neighbors, even if it qualifies as an emotional support animal. In any event, your client is not necessarily required to remove her parrot from her apartment -- only to prevent the parrot from causing excessive noise that disturbs her neighbors. Should your client inadvisably elect to file a Human Rights complaint, it will be referred to my client's insurance carrier and will be vigorously defended. Moreover, since the core issue in this matter is whether or not the parrot unreasonably disturbs other residents in the building, it is all but certain that any request for a stay would be denied. In fact, it is far more likely that any Human Rights proceeding would be stayed pending the resolution of this factual dispute in Civil Court.

---

[5] *Id.*, at § 13:41.

[6] 13 H.C.R. 34A, N.Y.L.J. Jan. 16, 1985, p. 15, col. 3 (Civ. Ct., Kings Co.)

As previously discussed, my client will afford your client an ample opportunity to cure her default by soundproofing her apartment, or otherwise. However, if these efforts prove unsuccessful, my client expressly reserves is rights to seek appropriate remedies under the governing lease and applicable law.

Very Truly Yours,
ROSEN LIVINGSTON & CHOLST LLP

Andrew J. Wagner.

cc. Board of Directors