ANDERSON KILL P.C.
Attorneys and Counselors at Law
1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Peter I. Livingston, Esq.
plivingston@andersonkill.com
212-278-1089

January 29, 2020

Jo-Ann Frey, Director
Regional II Enforcement Division
Office of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 3532
New York, NY 10278-0068

Re: Lesser, Meril E. v. Rutherford Tenants Corp. et al.
HUD Title VIII No.: 02-18-9990-8
105533/RTT07

Dear Director Frey:

We are General Counsel to Rutherford Tenants Corp. and are in receipt of a copy of your letter dated January 13, 2020 requesting data from our clients Rutherford Tenants Corp. a cooperative housing corporation in connection with an unrelated claim asserted by Meril Lesser, a shareholder who owns an apartment at Rutherford Tenants Corp.

Quite frankly my clients cannot understand why this request is being made with respect to an unrelated event which transpired more than three years after Ms. Lesser was advised that the parrots she harbored in her apartment created a nuisance.

## HISTORY OF THE PARTIES

For your convenience, I am enclosing herewith a copy of the Hold Over Petition which was filed in June 2016 by Rutherford Tenants Corp. in connection with Ms. Lesser keeping parrots in her apartments which caused an ongoing noise

disturbance that unreasonably annoyed other building residents and interfered with their right to quiet enjoyment. Complaints about the parrots date back to at least May, 2015.

There was never an objection by my clients to Ms. Lesser maintaining pets in her apartment including parrots. The only reason not to allow her to continue to do this is because these parrots were creating a noise nuisance. Pursuant to the terms of Ms. Lesser's Proprietary Lease she agreed that she would not permit any unreasonable noise which would interfere with the rights of other lessees.

Following repeated notices given to Ms. Lesser, she failed to cure the nuisance and was put on notice as a result of her steadfast refusal to remove the parrots, that the Corporation felt it had no other choice but to bring a Court proceeding seeking to terminate Ms. Lesser's lease unless she were to remove the subject parrots which created the nuisance that was complained about by others in the building.

In response Ms. Lesser through counsel filed an Answer on or about the 5th day of August, 2016. She asserted several affirmative defenses but at no point alleged that she was the victim of any form of discrimination. A copy is enclosed.

Seven months later, Ms. Lesser through the same counsel, filed an Amended Answer and for the first time alleged that these parrots were supposedly emotional support animals.

Ms. Lesser subsequently moved out of the building but remains an owner of her apartment.

Whether the parrots were emotional support animals really is irrelevant since they caused a nuisance. However, given the fact that this "new" affirmative

defense was asserted, a discovery demand was served upon Ms. Lesser's counsel with respect to requesting medical evidence to substantiate her claim she had a need for these alleged emotional support animals.

I am enclosing herewith for your convenience a copy of the Order of the Court which was entered on October 18, 2018 wherein because of Ms. Lesser's repeated refusal failure to comply with a discovery request to provide medical documentation, the Court ordered that at trial she would be precluded from offering any medical records into evidence.

Fast-forward to 2019, Ms. Lesser wants to sell her apartment and our client cooperated with Ms. Lesser by permitting her to have an open house whereby numerous brokers and potential buyers could view her apartment at one time, a practice which is usually not permitted since it is disruptive to having a lot of people descend on the building at one time. Thereafter, Ms. Lesser submitted through her broker an applicant's package for a prospective buyer. Unfortunately for Ms. Lesser this buyer was ultimately not approved. We are unaware of any effort made by Ms. Lesser to secure another buyer. From a financial point of view it would have been in the coop's financial interest to approve the buyer and thereby gain a flip tax upon the sale. However the board felt this was an unqualified candidate

We have received correspondence from George X. Meggali, an attorney in your Regional Office indicating that HUD reviewed the buyer's application package and in Mr. Meggali's opinion the buyer had strong financials and therefore should be approved.

It appears that Ms. Lesser is trying to manipulate the subject matter of HUD's investigation to conflate the request to remove her parrots in 2015 with the Board's action in turning down her buyer in 2019. We explained to Mr. Meggali that a buyer's finances in one of many issues to be considered when approving a buyer who is going to be a new neighbor. His opinion as to the strength of the application is not necessarily the same as the Board's.

The Board consists of five volunteers who all bring their experiences to bear with respect to sensing whether a prospective buyer should be approved. Mr. Meggali apparently wanted the Board to drop everything they were doing and approve Ms. Lesser's buyer. Unfortunately in this particular situation the Board decided against approving this buyer. Ms. Lesser is of course encouraged to find a qualified buyer.

Mr. Meggali was critical of the amount of time it took to review the Buyer's application package and made a veiled threat that this could be considered retaliatory. Mr. Meggali is apparently unaware of the time constraints that these volunteers have to manage the affairs of the building and not just Ms. Lesser's desire for a prompt review of her buyer's application.

As the attached minutes demonstrates, the Board only meets once a month and has to deal with a number of significant issues including but not limited to:

1. Reviewing alteration plans for numerous apartments
2. Shareholder Arrears
3. Sublet Renewals

4. Elevator Replacement contracts

5. Local Law 11 work to inspect and replace the façade of the building

6. Refinancing underlying mortgage

7. Transfers of apartments into Trusts and Estate issues.

For HUD to continue to delay making a decision with respect to the parrot case is patently unfair to our client as well as its actions in opening this new theater of inquiry having nothing to do with whether or not in 2016 the Board acted improperly when it sought to protect the interests of its shareholders by requesting that Ms. Lesser remove and/or replace the parrots that she had in her apartment. HUD's delays is also disrespectful to the Court which agreed to delay a trial pending HUD's determination.

THE DATA

With respect to the data now being requested, the first item requested is a complete copy of the prospective purchaser's application. It would seem that HUD was already familiar with respect to that buyer's Board package since Mr. Meggali was able to comment on the buyer's financial "health."

With respect to that request as well as inquiry Number Four which states:

> "provide the complete applications for all applicants/prospective purchasers of units at the subject premises from January 1, 2015 - December 31, 2019. This includes those applicants/prospective purchasers who have been approved and those who have been denied. In each case provide the reasons for the approval or denial of the applicants".

Rutherford Tenants respectfully cannot voluntarily honor this request. The information which is being sought is not the type of information that the Board believes it

is allowed to distribute. This information was given in confidence by each prospective buyer to the Board of Directors and the Board does not have their permission to distribute this information to a third party even HUD. Moreover these Board packages contain hundreds of pages of very sensitive information concerning personal information about a prospective buyer and their family, their finances, tax returns, bank records their job prospects and the like. Very often there are outside services which provide information in terms of background checks which similarly contain very sensitive information which the Board does not believe it has the right to voluntarily share with a third party. Indeed they are concerned if it were to share any of this information the coop could be subject to potential litigation from the individuals whose information has been divulged.

Coop applications contain the most invasive requests for documents and personal information that a person will have in their lifetime. Moreover, disclosing the approved applications of current shareholders would constitute a breach of the Board's fiduciary duty to these shareholders. Moreover, these Board packages have no meaningful relevance to Ms. Lesser's buyer.

With respect to your request for a complete copy of all Board minutes from August 1, 2019 - January 13, 2020 I am enclosing herewith copies of those minutes.

With response to a request for a complete copy of the Board's rules/instructions governing the selection of a buyer/new tenant there are no such written rules or instructions.

The Rutherford's Board of Directors however understands that under New York and Federal Human Rights Laws it does not have the right to discriminate against any prospective buyer based on various criteria including national origin, race, religion, employment and the like. We are unaware that there was anything in the prospective buyer's application to reveal that the Buyer was a member of a protected class.

As I am sure you understand under the Business Judgment Rule in the State of New York, courts have found that as long as Boards act for the purpose of the cooperative within the scope of its authority and in good faith, Courts will not substitute their judgment for the Boards. See *Levandusky* 75 N.Y.2d at 530 (1990). See also *Pullman*, 100 N.Y.2d at 147 (2003).

In adopting this rule, the New York Court of Appeals found that it must balance the sometimes competing interest in protecting individual residents from abusive exercise of a Board's broad powers and protecting the collective interest of the entire community of residents in an environment managed by the Board for the common benefit and accordingly this approach serves to protect the cooperative's business decisions from judicial second-guessing. Thus when reviewing a cooperative's Board decision to disapprove a sale of shares for example, a Court will not engage in an independent assessment of the reasonableness of the decision and will not evaluate the merits or wisdom of a Board's decision citing to *Morton v. 303 West 122nd Street H.D.F.C.*, 2011 N.Y. Misc. Lexis 3478.

We respectfully suggest that this rule of law is equally applicable to the instant inquiry which HUD is making at this time with respect to the underlying decision by a Board not to approve Ms. Lesser's buyer especially since it has nothing to do with the 2015 requests to replace her parrots.

Finally with respect to a request for copies of all correspondence provided/submitted to the other applicants/prospective purchasers for the period of January 1, 2015 – December 31, 2019 this request is incorporated into request number four which asks for all completed application packages. Any correspondence to or from said prospective buyers or applicants would be within that same package of material which respectfully cannot voluntarily be made available for viewing.

If HUD is interested in accordance with your letter to pursue conciliation with all parties to settle the complaint we would welcome that opportunity.

However, we quite frankly do not understand the rationale for HUD to be inquiring about Ms. Lesser's buyer not having been approved is somehow connected to an event which occurred more than three years after Ms. Lesser's failure to comply with the House Rules and Proprietary Lease of the Corporation as well as a court order to turn over evidence of her need for an emotional support animal.

Our client is frustrated in not getting a determination of the actual claim which HUD represented would be made by the end of last year.

Respectfully submitted,

Peter I. Livingston

PIL:lk
Enclosures
cc: Mr. Timothy J. Konopka

Housing and Urban Development
Office of Fair Housing and Equal Opportunity
26 Federal Plaza, Room 35-32
NY, NY 10278

docs-100230473.1