UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>RUTHERFORD TENANTS CORP. and JAMES RAMADEI,<br>Defendants. | 21 Civ. 10383 (JHR) (OTW) |

**PLAINTIFF UNITED STATES OF AMERICA'S**
**LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits the following statement of undisputed material facts pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York in support of its motion for summary judgment.

**Complainant's Tenancy at the Rutherford**

1. The Rutherford is a residential cooperative apartment building that contains 175 units, located at 230 East 15th Street in New York, New York (the "Rutherford"). Defendant Rutherford Tenants Corp. is the shareholder cooperative association. (Declaration of David J. Kennedy, June 21, 2023 ("Kennedy Decl."), Exh. 3 (Deposition of Meril Lesser), at 17:15-20.)

2. Defendant Ramadei was at all times relevant to this complaint a member or the President of the Cooperative's Board of Directors (the "Board"). (Kennedy Decl., Exhs. 12, 14.)

3. Since 1999, Complainant Meril Lesser ("Lesser" or "Complainant") has owned unit 5J at the Rutherford. (Kennedy Decl., Exh. 3 (Lesser Deposition), at 17:15-20.)

4. From before 1999 to at least 2017, the Rutherford allowed pets, and Defendants did not have any policy or procedure for evaluating requests made by shareholders to reside with assistance animals. (Kennedy Decl., Exh. 35 (Deposition of James Ramadei), at 28:5-29:2.)

5. Lesser has been diagnosed with Generalized Anxiety Disorder and Major Depressive Disorder. (Kennedy Decl., Exh. 1B; Exh. 2; Exh. 3 (Lesser Dep.), *passim*; Exh. 5 (Deposition of Dr. Theresa Yonker), at 43:15-49:3; 55:7-56:12.)

6. Lesser's conditions affect her ability to "sleep, eat properly engage in public without panic attacks," and run her jewelry business. (Kennedy Decl., Exh. 1B; Exh. 2, at US_00726.)

7. Lesser's anxiety and depression comprise a mental health-related disability that interferes with her day-to-day functioning. (Kennedy Decl., Exh. 1B; Exh. 2.)

8. Lesser takes medication and participates in therapy to manage her symptoms. (Kennedy Decl., Exh. 1B; Exh. 2; Exh. 3 (Lesser Dep.), at 182:10-183:17, 196:22-201:17; Exh. 4 (Deposition of Dr. Adele Tutter), at 46:4-52:4.)

9. Lesser has been treated for her disability by Dr. Adele Tutter since 2009. (Kennedy Decl., Exh. 1B.) She has been treated by Dr. Teresa Yonker since August 2018. (Kennedy Decl., Exh. 2.)

10. Lesser relies on her three birds to "mitigate the mental health symptoms she experiences," and maintain a basic level of functionality. (Kennedy Decl., Exh. 1B; Exh. 2; Exh. 3 (Lesser Dep.), at 191:24-196:11; Exh. 5 (Yonker Dep.), at 49:4-18; 53:17-54:7; 59:10-60:4.)

11. Removing the birds would likely cause Lesser a "complete breakdown" requiring hospitalization. (Kennedy Decl., Exh. 2, at US_00727; Exh. 5 (Yonker Dep.), at 54:8-55:6.)

12. Two of those birds, Layla and Ginger, have lived with Lesser for approximately twenty years. Lesser acquired a third bird, Curtis, on or about January 2015, following the death of two other birds, Cassie and Sadie, who lived with Lesser for over a decade, until 2014. (Kennedy Decl., Exh. 1B; Exh. 3 (Lesser Dep.), at 27:12-31:6.)

**Complainant's Neighbor Raises Noise Complaints**

13. Charlotte Kullen ("Kullen") purchased the unit next to Complainant's, after Complainant had purchased her own unit and resided with her birds at the Rutherford. (Kennedy Decl., Exh. 39 (Kullen Dep.,) at 20:6-21:5.)

14. Prior to March 31, 2015, Lesser and Kullen had an amicable relationship in which they often texted one another, ate at restaurants together, and took care of each other's animals. (Kennedy Decl., Exh. 3 (Lesser Dep.), at 39:17-42:23; Exh. 39 (Kullen Dep.), at 21:6-22.)

15. Lesser and Kullen had a verbal argument on March 31, 2015, which resulted in Lesser slamming the door upon Kullen. (Kennedy Decl., Exh. 3 (Lesser Dep.), at 56:19-59:5.)

16. On or about April 2015, for the first time in the fourteen years that Kullen had been living next door to Lesser and her birds, Kullen complained to Halstead Management, the managing agent for the building ("Halstead"), about the noise from the birds. (Kennedy Decl., Exh. 35 (Ramadei), at 50:12-51:16.)

17. On May 15, 2015, Defendants through Halstead sent their first notice to Lesser about alleged noise from her apartment, noting that it received "numerous complaints from various neighbors" regarding the noise. (Kennedy Decl., Exh. 6.)

18. This statement was false, because only Kullen complained about noise prior to May 15, 2015. (Kennedy Decl., Exh. 35 (Ramadei), at 50:12-51:16.)

19. By email dated May 26, 2015, Lesser contacted Marcia Okon, a member of the Board, and stated that "I spoke to [Halstead] earlier today to see if the board, along with all those with grievances could arrange a time to meet with me in order to work towards a collective solution." Lesser further advised that she would be engaging in soundproofing measures and requested documentation of all complaints. (Kennedy Decl., Exh. 7.)

20. On August 19, 2015, Defendants through Halstead sent a second notice to Complainant about the noise from her apartment. (Kennedy Decl., Exh. 8.)

21. As of August 19, 2015, only Kullen had raised any noise complaints about the birds. (Kennedy Decl. Exh. 9, at US_01335-36.)

22. On September 15, 2015, Ramadei responded to one of Kullen's complaints by writing: "Your noise complaint is gaining legal traction. However, if we do not get a noise complaint from one or two more tenants, there will be little we can do. Noise complaints require collaboration or they can be interpreted as spite suits. Spite suits never win. Do you know of anyone else who is bothered by these birds? I have asked and people [sic] while they can hear them … they are not bothered by the noise. I need some help here." (Kennedy Decl. Exh. 9, at US_01335-36.)

23. From October 9, 2015, through February 26, 2016, Kullen — and only Kullen — placed 24 noise complaints to 311, prompting investigations by the New York City Department of Environmental Protection ("NYC DEP"). (Kennedy Decl., Exh. Exh. 39 (Kullen Dep.) at 171:3-172:16.)

24. NYC DEP conducted a total of fifteen site inspections during varying hours of the morning, afternoon, evening, and night from October 13, 2015, through

March 3, 2016, all in response to Kullen's complaints. The first visit from NYC DEP was announced, but subsequent inspections were unannounced. All fifteen NYC DEP inspections found that even though parrot sounds could occasionally be heard, there were no loud, unreasonable, or excessive noises; and the DEP issued no notices of any noise violations. (Kennedy Decl., Exh. 10.)

| Date and Time of NYC DEP Visit | NYC DEP Finding |
|---|---|
| October 13, 2015, at 2:30 PM | Inspector spoke with Lesser at her apartment door for 15 minutes and found "[t]here was no excessive loud noise from parrots, screaming, squawking or screeching heard or detected" (US_01479) |
| October 19, 2015, at 8:00 PM | Over the course of half an hour, inspector interviewed the doorman and patrolled the fifth floor and found "no loud noise made by an animal/bird noted or detected" (US_01480) |
| October 21, 2015, at 8:15 PM | Over the course of half an hour, inspector found "there were no unreasonable or excessive noise (parrots) at the above premises" (US_01483) |
| October 24, 2015, at 12:30 AM | Inspector remained in lobby, and found "no unreasonable noise from 'parrots'" (US_1484.) |
| October 28, 2015, at 8:30 AM | Inspector toured fifth floor for half an hour, rang the doorbell, and "did not hear any parrots inside" Lesser's apartment. (US_01487) |
| October 31, 2015, at 11:15 AM | Inspector toured fifth floor for a full hour and heard "no excessive loud noise from parrots screaming or shrieking." Inspector rang the doorbell and spoke with Lesser, "knows that the complaint is from her neighbor who is upset after they broke up their friendship." (US_01490) |

| | |
|---|---|
| November 21, 2015, at 1:15 PM | Inspector "observed vicinity of premises with no loud noise from parrots detected" over one hour. (US_01495) |
| December 17, 2015, at 6:00 PM | "There was no unreasonable noise (bird) noted from the above location at this time. Inspected the location" for half an hour. (US_01497) |
| January 21, 2016, at 12:45 AM | Inspector found "no unreasonable or excessive noise (animals) noted or detected. Inspected the vicinity of the above location" for fifteen minutes. (US_1500) |
| January 25, 2016, at 10:45 PM | Inspector found "no excessive or unreasonable noise (animal noise)" after they "patrolled and observed area" over forty-five minutes. (US_1503) |
| February 3, 2016, at 12:45 AM | Inspector remained in front of building and found "no unreasonable noise" (US_1507) |
| February 7, 2016, at 11:30 PM | Inspector "[did not find] any noise coming from the apt 5-J" over half hour visit. (US_01509) |
| February 9, 2016, at 10:00 PM | Inspector found "there was no unreasonable noise" after "inspect[ing] the location" for fifteen minutes. (US_01512) |
| February 20, 2016, at 3:30 PM | Inspector found "there was no unreasonable or excessive noise (animals) noted or detected . . . . Observations made on fifth floor of above premises. Inspection revealed there to be squawking detected upon first arriving to fifth floor . . . . After speaking with respondent, noise of parrots ceased." Inspector present for forty-five minutes. (US_01477) |
| March 3, 2016, at 11:00 PM: | Inspector spoke to doorman over fifteen minutes and "no noise from parrots detected at time." (US_01516) |

25. The House Rules of the Rutherford require that “Complaints regarding other residents shall be made in writing to the Managing Agent. If the complaint requires immediate action or occurs during non-business hours, verbal notice shall be given to the doorman and confirmed in writing to the Managing Agent.” (Kennedy Decl., Exh. 11.)

26. Defendants claim to have lost the logbooks that the Rutherford’s doormen maintained in 2015 and 2016 to, among other things, record complaints. (Kennedy Decl., Exh. 39 (Kullen Dep.), at 17:11-19 (citing Defendants’ counsel).)

27. Beginning in January 2016, nine months after Kullen had begun complaining about bird noises but three months after Ramadei told Kullen “I need some help here,” Sam Keany, Lesser’s downstairs neighbor, began complaining to the Board about alleged bird noises. (Kennedy Decl., Exh. 36 (Deposition of Sam Keany), at 18:2-9.)

28. On a single occasion, on April 3, 2016, Board member Marcia Okon — who lived across the hall from Lesser — complained about alleged bird noises. (Kennedy Decl., Exh. 38 (Deposition of Marcia Okon), at 93:16-95:15.)

29. In all, two residents out of the fifteen units on the fifth floor of the Rutherford complained about alleged bird noises, and three residents in total out of the 175 units complained. (Kennedy Decl., Exh. 16, at 3.)

30. Defendants issued a Notice to Cure to Lesser on or about March 7, 2016. (Kennedy Decl., Exh. 12.)

31. On or about March 28, 2016, an attorney for Lesser sent a letter to the Board explaining the soundproofing measures Lesser had taken to reduce alleged objectionable noises from escaping her apartment: plugging electrical outlets; installing more carpeting throughout the unit; covering her birds’ cages at night and whenever she left the apartment; and installing a

professional sound panel to hang on the birds' cages. (Kennedy Decl., Exh. 3 (Lesser Dep.) at 63:8-68:21; 91:19-92:15; 94:12-95:7; 97:16-99:14; Kennedy Decl., Exh. 1A.)

32. The March 28, 2016, letter also expressly advised the Board that Lesser was a person with a disability who required emotional support animals, and attached a letter from Dr. Tutter stating that:

> I am licensed by the state of New York to practice Medicine with a specialty in Psychiatry. I am writing to certify that Ms. Meril Lesser, [date of birth redacted], has a mental health related disability recognized by the Diagnostic and Statistical Manual, 5th Edition.
>
> Ms. Meril Lesser has been under my professional care for her mental health related disability since 2009, i.e. 7 years. I am thus intimately familiar with her history and with the functional limitations posed by her mental health-related issues, which interfere with her ability to manage what would otherwise be considered normal, but significant day to day situations. In order to function optimally, Ms. Lesser requires the presence of three emotional support animals: a bare eyed Cockatoo parrot named Layla (17 years old); a white fronted Amazon parrot named Ginger (15 years old); and a Goffins Cockatoo parrot named Curtis (20 years old). Two of these birds have been with her as long as she has lived in her current apartment, 17 years. It is important to emphasize that the presence of these animals is necessary for [ ] the optimal functioning of Ms. Lesser, [who] works from home, as their presence helps to mitigate the mental health symptoms she experiences. All three birds must be present as they are long-term companions of each other and cannot be separated without negative consequences.

(Kennedy Decl., Exh. 1B.)

33. By letter dated March 30, 2016, from the law firm of Rosenberg Livingston & Cholst, Defendants refused to accept Lesser's request for an accommodation, asserting that "it is axiomatic that a tenant is not entitled to harbor an animal in the premises that disturbs her neighbors, even if it qualifies as an emotional support animal." (Kennedy Decl., Exh. 13.)

34. On or about May 17, 2016, Defendants issued a Notice of Termination to Lesser with a vacate date of May 31, 2016. (Kennedy Decl., Exh. 14.)

35. On or about June 13, 2016, Defendants initiated a Notice of Petition for a Court Eviction hearing, which commenced on or about June 29, 2016, in the Civil Court of New York, Housing Part. (Kennedy Decl., Exh. 15.)

36. At the time Defendants denied Lesser's request for a reasonable accommodation and initiated eviction proceedings against her in 2016, the members of the Board were Nancy Benedetto, Samuel Keany, Marcia Okon, James Ramadei, and Bruce Kamins. (Kennedy Decl. Exh. 35 (Ramadei Dep.), at 221:23-222:2; Exh. 36 (Keany Dep.), at 48:5-10; Exh. 37 (Benedetto Dep.), at 94:8-12; Exh. 38 (Okon Dep.), at 111:18-24.) Kamins since left the Rutherford and Defendants do not have any contact information for him. (Kennedy Decl., Exh. 16, at 3.)

37. At the time Defendants denied Lesser's request for a reasonable accommodation and initiated eviction proceedings against her in 2016, Defendants had no evidence disputing that Lesser had a disability — i.e., a physical or mental impairment that substantially limits one or more major life activities. (Kennedy Decl. Exh. 35 (Ramadei Dep.), at 223:2-7; Exh. 36 (Keany Dep.), at 43:18-24; Exh. 37 (Benedetto Dep.), at 98:19-22; Exh. 38 (Okon Dep.), at 114:10-17.)

38. At the time Defendants denied Lesser's request for a reasonable accommodation and initiated eviction proceedings against her in 2016, Defendants had no evidence disputing that Lesser had a disability-related need for an assistance animal. (Kennedy Decl. Exh. 35 (Ramadei Dep.), at 223:22-224:2; Exh. 36 (Keany Dep.), at 45:22-25; Exh. 37 (Benedetto Dep.), at 99:9-12; Exh. 38 (Okon Dep.), at 115:8-13.)

39. At the time Defendants denied Lesser's request for a reasonable accommodation and initiated eviction proceedings against her in 2016, Defendants had no evidence that any of Lesser's birds posed a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation. (Kennedy Decl. Exh. 35 (Ramadei Dep.), at

225:7-20; Exh. 36 (Keany Dep.), at 46:19-47:16; Exh. 37 (Benedetto Dep.), at 100:3-9; Exh. 38 (Okon Dep.), at 116:8-117:19.)

40. At the time Defendants denied Lesser's request for a reasonable accommodation and initiated eviction proceedings against her in 2016, Defendants had no evidence that any of Lesser's birds would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation. (Kennedy Decl. Exh. 35 (Ramadei Dep.), at 226:7-11; Exh. 36 (Keany Dep.), at 47:24-48:4; Exh. 37 (Benedetto), at 100:16-19; Exh. 38 (Okon Dep.), at 117:20-25.)

41. Defendants never provided Lesser with any complaints of excessive noise. (Kennedy Decl., Exh. 3 (Lesser Dep.) at 82:10-19; Exh. 18 (letter from counsel, dated September 15, 2015).)

42. At no point did Kullen — or anyone else — provide Defendants medical, psychiatric, or other evidence that Lesser's birds posed a direct threat to her health or safety. (Kennedy Decl. Exh. 39 (Kullen Dep.), at 279:10–281:15; Exh. 35 (Ramadei Dep.) 156:7-21, 225:11-20.)

43. Neither Defendants, nor any of their representatives, ever met with Lesser. (Kennedy Decl., Exh. 3 (Lesser Depo.) 158:3-7.)

44. Defendants never retained an expert to measure the decibel level of the alleged noise. (Kennedy Decl., Exh. 35 (Ramadei Dep. 189:6-25).)

45. Defendants did not review the NYC DEP's reports prior to commencing eviction proceedings against Lesser. (Kennedy Decl., Exh. 35 (Ramadei Dep. 136:14-20, 173:7-20).)

46. Defendants never retained the services of a soundproofing expert or engineer to address the alleged noise from unit 5J. (Kennedy Decl., Exh. 35 (Ramadei Dep.) at 128:7-24, 184:10-185:6).)

47. The Rutherford has never commenced eviction proceedings against anyone other than Lesser. (Kennedy Decl., Exh. 35 (Ramadei Dep.) at 230:20-24).)

48. The Board's decision to commence eviction proceedings against Lesser is nowhere reflected in the official minutes of the Board. (Kennedy Decl., Exh. 35 (Ramadei Dep. 231:20-22).)

49. The Board has never advised the other shareholders of the Rutherford that it filed eviction proceedings against Lesser, a fellow shareholder.

50. On July 30, 2016, Lesser left her apartment, on Dr. Tutter's recommendation. (Kennedy Decl., Exh. 3 (Lesser Dep.) at 117:6-19; Kennedy Decl., Exh. 4 (Tutter Dep.) at 32:5-12; 60:5-20.)

51. On September 29, 2016, Lesser's attorney wrote to counsel for the Board and advised that Lesser and the birds were no longer in the apartment, and that Lesser would agree to not maintain her birds at that residence, provided that Lesser would not pay the co-op's legal fees. (Kennedy Decl. Exh. 3 (Lesser Dep. 184:5-13); Kennedy Decl. Exh. 19.)

52. As of December 14, 2016, the total amount of the co-op's legal fees charged by Defendants' counsel (including their lawyer in this litigation) was $6,286.26. (Kennedy Decl. Exh. 20.)

53. Defendants continue to maintain eviction proceedings against Lesser. *See Rutherford Tenants Corp. v. Meril E. Lesser*, LT-066886-16/NY. (Kennedy Decl., Exh. 21.)

54. On May 14, 2018, Lesser filed a timely complaint against Defendants with the Department of Housing and Urban Development ("HUD"), pursuant to 42 U.S.C. § 3610. (Kennedy Decl., Exh. 22.)

55. Two months after Lesser filed her complaint with HUD, in July 2018, Defendants, for the first time, placed on Lesser's July 9, 2018, monthly maintenance bill a charge of $62,241, allegedly for legal costs incurred by Rutherford in the eviction proceedings. (Kennedy Decl., Exh. 23.)

56. Defendants placed charges for legal fees on Lesser's maintenance bills, eventually escalating to $72,588.04 on October 25, 2018. By May 1, 2019, Defendants removed the charges from Lesser's maintenance bills. (Kennedy Decl., Exh. 24.)

57. On August 16, 2019, Lesser entered a contract of sale for her unit with a prospective purchaser (the "Applicant") for the purchase price of $467,500. (Kennedy Decl., Exh. 26 (Supplemental Report of Heather Albright, dated Mar. 9, 2023 (summarizing and analyzing application).)

58. On October 11, 2019, the Applicant submitted his application to Defendants for their approval of the sale and provided supplemental information on October 25, 2019. Kennedy Decl., Exh. 26 (Supplemental Report of Heather Albright, dated Mar. 9, 2023 (summarizing and analyzing application).)

59. The entire application consists of 374 pages, Bates-stamped APT-5J 0001 to APT-5J 0374. (Kennedy Decl., Exh. 26 (Supplemental Report of Heather Albright, dated Mar. 9, 2023 (summarizing and analyzing application).)

60. Defendants never interviewed the Applicant. (Kennedy Decl., Exh. 35 (Ramadei Dep.), at ; Exh. 37 (Benedetto Dep.), at 144:9-146:31.)

61. On December 16, 2019, the Board denied the Applicant's application to purchase Lesser's unit. (Kennedy Decl., Exh. 26 (Supplemental Report of Heather Albright, dated Mar. 9, 2023 (summarizing and analyzing application); Exh. 35 (Ramadei Dep.), at 254:13-257:15; Exh. 37 (Benedetto Dep.), at 141:14-152:18.)

62. At the time Defendants denied the application to purchase Lesser's co-op, the members of the Board were Nancy Benedetto, Francesca Cooke, Marcia Okon, James Ramadei, and Stephen Troy, although Troy did not vote on the Application. (Kennedy Decl., Exh. 35 (Ramadei Dep.), at 254:13-257:15; Exh. 37 (Benedetto Dep.), at 141:14-152:18.)

63. At all relevant times, Defendants had no written policies, guidance, or criteria for the Board to use to assess applications. (Kennedy Decl., Exh. 35 (Ramadei Dep.), at 254:13-257:15.)

64. There is no contemporaneous documentation of the Board's reasons for rejecting the application. (Kennedy Decl., Exh. 35 (Ramadei Dep.), at 254:13-257:15.)

65. During its investigation, HUD asked Defendants to provide a legitimate, non-retaliatory reason for their denial of the Applicant's application to purchase Complainant's apartment. Defendants refused to provide any reason or explanation for their decision. (Kennedy Decl., Exh. 28.)

66. Analysis by the Government's expert Heather Albright, a Certified Fraud Examiner, demonstrated that Applicant, whose application to purchase Lesser's unit was rejected, compared favorably to other applications that the Board approved during the same time period, using the criteria commonly used by New York City co-ops to assess applications: percent of down payment paid, FICO score, post-closing liquidity ratio, debt-to-income ratio, and housing expense ratio. (Kennedy Decl., Exh. 26 (Albright Supp. Report ¶¶ 24-25).)

67. Among the reasons that Board members gave in deposition testimony over two years later to reject the Applicant was that the Applicant applied as a trust, but he amended his application to apply personally. (Kennedy Decl., Exh. 26 (Albright Supp. Report ¶¶ 26-29).)

68. Another reason that Board members gave in deposition testimony over two years later to reject the Applicant was that it was not clear whether the Applicant would live in the unit year-round. But the Board approved another application during the same one-year period where it was not clear that the applicant family would live in the unit year-round. (Kennedy Decl., Exh. 26 (Albright Supp. Report ¶¶ 30-32).)

69. Among the reasons that Board members gave in deposition testimony over two years later to reject that Applicant was that they felt the application contained discrepancies, but Albright's independent assessment concluded that the application contained no material discrepancies, while all of the other applications that the Board approved during the same term contained equal or greater discrepancies. (Kennedy Decl., Exh. 26 (Albright Supp. Report ¶¶ 33-43).)

70. On January 15, 2021, the Secretary issued a Charge of Discrimination pursuant to 42 U.S.C. § 3610(g)(2), charging Defendants with engaging in discriminatory housing practices and retaliation in violation of the Fair Housing Act. (Kennedy Decl., Exh. 1.)

71. On February 2, 2021, Defendants timely elected to have the charge decided in a federal civil action, pursuant to 42 U.S.C. § 3612(a). (Kennedy Decl., Exh. 1.) Defendants agreed to toll the filing deadline to December 1, 2021. (Kennedy Decl., Exh. 32.)

72. Both Dr. Tutter and Dr. Yonker have reported that Defendants' actions, from 2015 through the present, have had severely negative consequences for Lesser's mental health

and triggered Post-Traumatic Stress Disorder. (Kennedy Decl., Exh. 2 (Yonker report); Exh. 3 (Lesser Dep.), at 4:19-5:8, 201:18-202:9; Exh. 17 (Tutter Letter).)

Dated: New York, New York
June 21, 2023

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States

By: /s/ David J. Kennedy
DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2733
david.kennedy2@usdoj.gov