# Exhibit 1

M. E. LESSER

Q. The co-op was not demanding that you remove the birds from the premises, were they?

A. Well, you did tell me when I called you when I received the Notice to Cure, you told me that I might have to get rid of my birds.

Q. Ms. Lesser, I don't recall a conversation whether it took place or not, but the question is -- I'm not the co-op, okay?

A. You represent the co-op.

Q. Ms. Lesser, please. Do you have anything in writing from the co-op in which they demanded that you remove the birds from the premises?

A. No. They said stop the bird noise.

Q. Beg your pardon?

A. All they said was stop the bird noise.

Q. All they said was stop the bird noise?

A. Right.

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

1        M. E. LESSER
2    Q.    And that's been consistent
3 throughout the proceedings?  They wanted
4 you to stop the bird noise, isn't that
5 true?
6    A.    Bird noise that never happened.
7 I mean, I'm not -- but they --
8    Q.    That's what they had been
9 asking for?
10       COUNSELOR KENNEDY:  Objection.
11    Please let the witness answer.
12       COUNSELOR LIVINGSTON:  She's
13    answering.
14    A.    This is made up stories about
15 the birds.
16    Q.    Okay, but whether it's made up
17 or not --
18    A.    I don't now how to stop bird
19 noise when it's not happening, Sir.
20    Q.    That was on you to take care
21 of, right?
22    A.    What I'm saying is that wasn't
23 the case.
24    Q.    All right.
25    A.    So what else am I supposed to

                    M. E. LESSER

do?

    Q.    Assuming for the purposes of this conversation, the Board --

    A.    So I left.

    Q.    -- believed there were noise coming from the birds that were disrupting others --

    A.    Charlotte and two board members.

    Q.    The co-op wanted you to do what was necessary to prevent the noise from disturbing neighbors, true?

    A.    I don't know. Nobody would ever meet with me or speak with me. All I have is two letters from Halstead and a Notice to Cure and a court order for a Holdover Proceeding.

    Q.    And a petition?

    A.    It doesn't matter what it was. You know what I mean.

    Q.    None of the relief the co-op was asking for was for you to remove the birds or get rid of the birds or however you want to phrase it, correct?

M. E. LESSER

    A.     That's what you told me when I called you to ask you for help.

    Q.     Do you have anything in writing?

    A.     I don't have anything in writing from the co-op because no one would speak to me, Peter.

    Q.     Okay. Thank you.

    A.     And after being harassed and terrified for my life and my birds' lives and -- my doctor in -- on July of 2016, she -- I would like to read this for the record. This is from Dr. Tutter. I believe her deposition is tomorrow. She's been my psychiatrist, I believe, since 2009. "Dear Ms. Lesser, as per our discussion today in the office, in my professional opinion, staying in your apartment at 230 East 15th, Apartment 5J, New York City, is not compatible with your mental health, due to the aggravated, emotional abuse you have been subjected to. I advise that you move to a supportive living situation, that you regain your